## HENRY S. MAGRAW v. JOHN A. McGLYNN.

PLEA OF TENDER.—If, by the laws of the United States, there is more than one kind of lawful money a legal tender in payment of debts, and the plaintiff in an

action is entitled to a judgment payable in a particular kind of money, a plea of tender which avers the tender to have been made in lawful money of the United States is insufficient. The plea should aver that the tender was made in the kind of money the plaintiff is entitled to receive. ·

How EXECUTOR HOLDS MONEY OF ESTATE.—An executor holds the money received by him from the proceeds of the estate in a fiduciary capacity for the use of those interested in the estate, and it is his duty to retain the money thus received until it can be distributed in the manner provided by law.

ACCOUNT OF EXECUTOR.—The Probate Court may require an executor, in his account, to state the kind of money received by him from the proceeds of the estate.

EFFECT OF ALLOWANCE OF CLAIM AGAINST AN ESTATE.—The allowance of a claim against an estate by the executor and Probate Judge is a judgment in no other sense than a judicial determination of the estates' indebtedness in a specified sum to a particular person. Before such claim passes into a final judgment, there must be a decree of the Probate Court directing it to be paid.

JUDGMENT IN PROBATE COURT.—A proceeding commenced by a creditor of an estate in the Probate Court to compel an executor to render an account, and to obtain a decree requiring the executor to pay the claim of the creditor, is in the nature of an action for the recovery of the money which the executor has in his hands, and to which the creditor is entitled, and a decree in such proceeding against the executor is a judgment.

DECREE REQUIRING EXECUTOR TO PAY OVER MONEY.—A decree made by the Probate Court, requiring an executor to pay over to creditors or legatees money in his hands, may compel the payment of the kind of money received by the executor.

APPEAL from the Probate Court of the City and County of San Francisco.

Henry S. Magraw, the respondent, one of the creditors of the estate of D. C. Broderick, deceased, presented his claim to the executor and the Probate Judge, and it was allowed August 28th, 1861. His claim was based upon the following promissory note, viz:

"$10,500.                    NEW YORK, July 1st, 1858.

"Ten months after date, I promise to pay to the order of A. Welch, at the ' Chemical Bank,' ten thousand five hundred dollars, without defalcation, for value received.

"D. C. BRODERICK.

"*Indorsed:* Washington, December 22d, 1858.

"Received on the within, three thousand five hundred dollars.
"$3,500.                                    "A. WELCH.

" Pay to the order of H. S. Magraw.
                                        "A. WELCH."

The other facts are stated in the opinion of the Court.

*Hoge & Wilson,* for Appellant.

We do not deem it our duty, under the views entertained by the executor, to present any argument on the great constitutional questions connected with the currency. We shall assume all the Acts of Congress and the State Legislature to be constitutional.

We ask whether, when an executor files his account in the usual form, and states the dollars and cents received, and the dollars and cents disbursed, and the dollars and cents due, it is not a proper account? Whether he is called upon to state the particular kinds of currency? Whether the Court, on general principles, can distinguish between one kind of currency and another? This debt arose long before the Acts of Congress under which the legal tender notes were issued, and long before the Act of the Legislature of this State, usually called the "Specific Contract Law." We have here no question of the specific performance of a contract; no agreement to pay in "a specific kind of money or currency." In the eye of the law there is *one* great circulating medium, called money. In fact, it consists of gold, silver, and paper—but in the theory of the law it is all equal, and all money. This case arises from a mere change in or rather addition to the currency, happening accidentally whilst this claim was pending.

The law, with its broad and sweeping power, declares legal tender notes to be money—cash—and a lawful medium for the payment of all debts. But the Probate Court says in effect: "Notwithstanding this, I will distinguish between the kinds of money. I *will make the debt payable only in gold.*"

Cases of individual hardship are constantly occurring under the present condition of the currency—they have happened in other countries—but the law must govern by general rules, and not be construed merely to avoid individual hardship.

In England, before the recoinage of all the coin of the realm in the reign of William III, the coin had become vastly depreciated by filing, clipping, boring, sweating, etc.; scarcely a

coin of true weight could be found. It was ordered by Parliament to be all recoined. Each man passed in his mutilated coin, which he had received *as if whole and of true weight*, and got it back only at its *exact weight and value.* What he had received in trade as £100, he received back from the mint on recoinage at say £60. The man who before recoinage, had borrowed £100 of the mutilated.coin, which he had to put into the mint for recoinage to his great loss, was compelled afterwards to pay the £100 back to the lender in coin of the new issue. The hardships were enormous. The whole realm was greatly distressed. But the judgments of the Courts were uniformly entered for £ *s. d.*, and the Court never knew, through the medium of their *legal senses* that there was that great difference between the old coin and the new. (See 4 Macauley's History of England, 495, *et seq.*)

It seems to us that the issuing of legal tender notes operates, in many instances, like this recoinage in England, and that the Court, in this cause could not judicially recognize that there was any difference in value between gold and other lawful currency.

The debt of the respondent was in judgment, and that judgment was payable according to its legal effect when rendered.

Had the decedent lived, and the debt been sued for in the District Court, the judgment would have been merely for dollars and cents, and it could have been satisfied by any legal currency. How, then, can the judgment against the administrator for the same debt be made payable in gold only? Had the claim been rejected by the executor, and suit been prosecuted to judgment in the District Court, that judgment would have been merely for dollars and cents. How then could any Court have said that though payable in dollars and cents only, still that judgment must be paid in gold coin?

Now, the allowance of a claim by an executor and the Probate Judge, amounts to a judgment. " The approval of a creditor's claim by the Probate Judge is a judgment upon that claim, and cannot so far as the creditor is concerned be ques-

tioned at a subsequent term of the Probate Court." (*Swenson et al.* v. *Walker's Adm.* 3 Texas, 96 ; *Niel* v. *Hodge,* 5 Id. 487 ; *Finley* v. *Carothers,* 9 Id. 518.)

As our Probate Act is taken almost entirely from the Texas statutes, the decisions of their Courts giving a construction to them before we adopted them, are peculiarly applicable.

The debt of the respondent stood virtually a debt in judgment.    That judgment was payable in any lawful currency of the United States.    Such was the legal effect of that judgment, and according to that effect it was payable.    Yet the Probate Judge, by a proceeding long subsequent to the allowance and on facts transpiring long. after the judgment, *adds to the clauses of the judgment that it shall be payable in gold coin of the United States* only.    We say, adds to it, for that is virtually the result.

After a Court of general jurisdiction has rendered a general judgment, it cannot at a subsequent term add to it ; how can a Court of limited and special jurisdiction ?

*Patterson, Wallace & Stow,* for Respondent.

The appellant is a *trustee*—First, to collect the assets ; Second, to apply the same to the payment of debts, under the direction of the Probate Court ; Third, to distribute the residue pursuant to the provisions of the will. (*Chapman* v. *Forsyth,* 2 How. U. S. 208 ; *Halleck* v. *Guy,* 9 Cal. 195 ; *Dox* v. *Backenstose,* 12 Wend. 543 ; *Van Horn* v. *Fonda,* 5 John. Ch. R. 408.)

Executors hold the property of their testators    *    *    in their hands *in trust* for the payment of debts and legacies, and for the application of the surplus according to the will of the testator.    *    *    (Tiffany and Bullard on Trusts, etc. 483 ; *Brewer* v. *Van Arsdale's Heirs,* 6 Dana, 207, 210.)

The executor, having received coin, shall not be allowed to take advantage of *his delay* in applying for an order to pay the debts, to pay the same in a depreciated currency.    It was his duty to report what he had received, the debts presented

and allowed, and to have asked for an order to pay the debts. (Belknap's P. L. and F., Secs. 228, 243–245.)   Especially was that so when the debts against the estate were drawing interest.

In *Brewer* v. *Van Arsdale's Heirs*, 6 Dana, the administrator and guardian had made a judicial sale of land for *par money*, and he might have coerced the payment of such money ; he voluntarily received payment in depreciated currency, *and offered* to pay the distributees in that which he had received, the Court said (p. 207) : " But though the plaintiff may have acted in good faith, in accepting depreciated bank notes in discharge of the debt due for the land, yet, as the sale was for par money, and there is no evidence showing, or even tending to show, that he could not have coerced the payment of such money, he must be considered as having taken a less value, without authority, and at his peril ; and so far as the distributees have not received payment voluntarily in the kind of money which he erroneously collected, *they should not be required to take less than the value it was his duty to collect.*"

McGlynn did not receive any depreciated currency.   He received *money*, because Congress has not yet made gold less nor more than money.   He offers to pay a different currency.

In *Trumbull* v. *Nicholson*, 27 Illinois, 149, it was held that an attorney has no power to receive depreciated money in satisfaction of a judgment ; and that the Sheriff was bound to pay the holder of the judgment in legal currency.   (See *Nolen* v. *Jackson*, 16 Ill. 272.)

It follows that it is the duty of the Sheriff to pay as he receives or is bound to *receive*, and in no other or different currency.   He is no more a *trustee*, or *officer of the Court*, than an executor.

In *Marine Bank, etc.* v. *Chandler*, 27 Ill. 525, 539, it was held that a banker receiving funds on general deposit, was bound to pay his customer in currency of equal value to that which he *received*.   The principle is applicable to principal and agent.   (Dunlap's Paley on Agency, 28 ; Id. 45 ; *Knight* v. *Lord Plymouth*, 3 Atk. 480 ; *Hammond* v. *Cettle*, 6 Serg. & Rawle, 290.)

54

The executor has no right to mingle the money received as assets with his own, *or to exchange the same for other money,* (doing so, he is guilty of a breach of his trust,) or to deposit the same as a general deposit with his banker. (*White* v. *Baugh,* 9 Bligh, 181; *Pennell* v. *Duffell,* 23 Law Journal, 115; *Hasler* v. *Hasler,* 1 Bradford, 248; 1 Serg. & Rawle, 241.)

The executor received gold coin as assets in a fiduciary capacity. " * * *and in an action against any person* for the recovery of money received *by such person in a fiduciary capacity,* or to the *use of another,* judgment for the plaintiff, whether the same be by default or after verdict, may be made payable in the same kind of money or currency so received by such person." (Practice Act, Sec. 200, as amended April 27th, 1863, pp. 687, 688.) This applies to proceedings in the Probate Courts. (Belknap's P. L. Sec. 293.)

To the extent of respondent's debt, appellant received the assets for the *use of respondent,* and *in a fiduciary capacity.* This statute affects the *remedy,* and not the *contract;* it created no new liability, it only seeks to enforce a right existing prior to its passage, by prescribing the mode of enforcement. It applies as well to *assets* received before as after its enactment. It is valid, and the Probate Court but enforced the law in making the order appealed from. (*Rockwell* v. *Hubbell,* 2 Douglass Mich. 197; *Bronson* v. *Newberry,* 2 Douglass, 38; *Mason* v. *Hailie,* 12 Wheaton, 370; *Beers* v. *Houghton,* 9 Peters, 379.)

By the Court, CURREY, J.

The executor of the last will and testament of the Honorable David C. Broderick, deceased, has appealed to this Court from an order and decree of the Probate Court of the City and County of San Francisco, requiring him to pay, in gold coin of the United States, the amount of a debt due the plaintiff from the estate of the deceased. Upon the petition of the plaintiff the executor was directed by an order of the Probate Court to render a full account and report of his administration,

showing the amount of debts and liabilities approved and allowed against the estate of the deceased; the expenses and charges of administration; the amount of all sales of real and personal property made by him, and the amount of moneys received, specifying the times when received and the kind of currency and coin received therefor by him; and it was further ordered that upon the coming in of the account and report the executor and the legatees, devisees and all persons interested in the estate of the deceased, should show cause why an order should not be made that all of the debts of the estate be paid. The executor appeared in obedience to this order and rendered his account, showing the amount of money received, and also the amount paid out, leaving in his hands a large sum of money belonging to the estate. The account so rendered did not specify the kind of money received by the executor, and for this reason the plaintiff, as a creditor of the estate, excepted to the account as insufficient, and objected to its allowance by the Court until the kind of money, which he alleged was gold coin, was specified and disclosed by the executor; and in conclusion, the plaintiff prayed the Court that the executor might be ordered and decreed to pay the debt due him in current gold coin of the United States. To the exceptions and objections so made the executor answered that his account was in all respects full and complete, and submitted that the creditor's exceptions and objections were insufficient in law and should be denied and disallowed; and he also, on his part, objected that the Court had no jurisdiction or legal authority to require a specification of the kind of money which he had received on account of the estate. The executor, for further answer to the objections and exceptions of the plaintiff, alleged that the debt due him had been tendered to him in lawful money of the United States at the Chemical Bank in the City of New York, where the promissory note on which the same was due was made payable, and that the same was refused by the plaintiff; and he further averred that the money remained deposited at said bank subject to the plaintiff's order, as the amount due him. The

Court overruled the answer and sustained the exceptions and objections of the plaintiff, and made an order directing the executor to file an amended account on or before a day specified. The executor obeyed the order of the Court and filed an amended account showing that the money received by him as well as that disbursed was all of the description and kind of money designated as United States gold coin; whereupon the Court, by an order, allowed the account as amended, and directed and decreed that the executor pay the debt due the plaintiff in United States gold coin.

The executor duly excepted to the rulings of the Court adverse to him, and on appeal assigns as error the orders and decree of the Probate Court requiring him to set forth and show the kind of currency in which the funds referred to in his account were received, and also the decree requiring the payment to the plaintiff to be made in gold coin of the United States.

The debt due the plaintiff was the balance of a promissory note made and delivered by the appellant's testator at the City of New York on the first day of July, 1858, payable ten months after date at the Chemical Bank in that city. The tender is alleged to have been made in lawful money of the United States, which it is also alleged was then the usual circulating medium in the City of New York, and was then and there receivable in payment and satisfaction generally of all debts and liabilities existing between private persons. This answer does not disclose what particular kind of money—that is, whether gold coin or United States treasury notes—was tendered; and as gold coin of the United States and United States treasury notes were both at the time lawful money of the United States, we are left in ignorance by the answer as to which of these kinds of money was tendered; and unless either kind would have constituted a valid tender in the payment of the debt due, we must hold the plea of tender insufficient. This point, then, must be postponed as dependent upon the solution of the principal question in the case, which is as to the obligation of the executor to pay the plaintiff's

debt in the kind of currency which he received for the property of the estate, and which he had in his custody and keeping when the order and decree was made.

An executor holds the property of his testator in trust for the payment of debts and legacies, and for the application of the surplus according to the will of the testator. He has only a qualified property in the assets of the estate of the testator, under a trust to apply the same to the payment of the testator's debts, and such other purposes as he ought to fulfil in his office as executor. (*Fair* v. *Newman,* 4 Term R. 645 ; Tiffany and Bullard on Trusts and Trustees, 483.) By the statute of this State an executor is not permitted to make profit by the increase, nor to suffer loss by the decrease or destruction of any part of the estate, without his fault. (Probate Act, Section 217.) The money collected by the executor upon the sale of the property of the estate of the testator, was received and held by him in a fiduciary capacity for the use of the creditors of the estate, and others interested therein as beneficiaries under the will, and it was his duty to retain in his hands the money thus received until it could be applied and distributed in the order and mode provided by law.

. The executor was required to render a full account of his administration, and the authority of the Probate Court to enforce obedience to such an order is not doubted. (Probate Act, Sections 227, 228.) The account which an executor or administrator is required to render in such a case must, among other things, show what is the amount of money in his hands belonging to the estate, and if it be a matter of interest to those beneficially concerned, we deem it competent for the Court to require a specification of the kind of money received, for it is the money received by him on behalf of the estate which the creditors, legatees and distributees, as the case may be, are entitled to have.

It is said the allowance of a claim by an executor and the Probate Judge amounts to a judgment, and then it is argued that as the claim of the plaintiff in this case had been allowed, and passed into judgment, the judgment was payable in any

lawful currency of the United States; and in the same connection, it is insisted that it was not competent for the Probate Court, by a proceeding long subsequent, to add to the judgment a clause requiring it to be paid in gold coin of the United States; and the question is propounded, how can a Court of limited and special jurisdiction add to a general judgment at a term subsequent to its rendition, when a Court of general jurisdiction could not do an act of the kind? This argument is not without logical force, and were the premises upon which it necessarily proceeds admitted, it would not be easy, if it were possible, to avoid the conclusion that the Court erred in its decree requiring the executor to pay the plaintiff the amount due him in gold coin. But did the allowance of the claim of the plaintiff by the executor and Probate Judge constitute it a debt in judgment, in a general sense?

In *Neill* v. *Hodge*, 5 Texas, 489, the Court said: " The approval of the account after it had been admitted by the administrator, was a judicial act; a *quasi* judgment; and so far affected the rights of the parties as to prevent any further investigation in that Court. If it had not been approved, the creditor could have sued for his demand in the District Court, and obtained judgment; he could not, however, have had an execution. It would have been certified to the Probate Court to be paid by the administrator, in the due course of administration."

In a number of cases decided by the Supreme Court of Texas, arising under a statute substantially like our own, it has been held that the approval of a creditor's claim by the Probate Judge is a judgment upon the claim, and cannot, so far as the creditor may be concerned, be questioned at a subsequent term of the same Court. (*Swenson* v. *Walker*, 3 Texas, 96 ; *Neill* v. *Hodge*, 5 Id. 487 ; *Finley* v. *Carothers*, 9 Id. 518.) In the case of *Deck's Estate* v. *Gherke*, 6 Cal. 669, the Supreme Court of this State held that, by our probate law, claims against an estate, which have been allowed by the administrator and the Probate Judge, have the force and effect of judgments.

Neither the Supreme Court of Texas nor our own have ever held, as we are aware, that the allowance of a creditor's claim by the Probate Judge is anything more than a mere judicial determination of the estate's indebtedness in a specified sum to a particular person. When a given claim is allowed and it thus becomes judicially determined as a debt due the creditor, it thereby gains no preference over any other claim of the same class which may be allowed by the executor and approved by the Judge at a subsequent date. Claims so allowed and approved pass into judgments of a qualified character only. The amount due and to whom due is the substantive matter ascertained and determined. It is a judgment to this extent only. By the act of allowance and approval the claim is placed among the acknowledged debts of the estate; but before payment can be enforced it is necessary to obtain a decree of the Probate Court for that purpose; and when such judgment or decree is made, the executor must pay the creditor as directed. (Probate Act, Sections 243, 245.) The decree so made is a judicial determination of the rights of the parties, and possesses all the elements of a final judgment. (*Estate of Martin E. Cook*, 14 Cal. 130.) This decree determines the amount to be paid. This amount is ascertained by reference to the money of the estate in the hands of the executor. If there be sufficient in his hands for the payment in full of the creditor's demand, or only enough to pay a proportionate dividend, the decree is made according to the truth of the case, and the executor is required to make payment as directed by the decree from the money of the estate in his hands or presumed to be there. In this case the money in the hands of the executor was gold coin of the United States, and the decree requires this kind of money to be paid to the creditor. This decree is in consonance with justice, and in our judgment is authorized by the law of the land.

If there was any doubt as to the power of the Probate Court, under the law as it exists, independently of the Act of 1863, called the "Specific Contract Law" (Laws 1863, p. 687), then that Act, as it seems to us, has relieved the subject

of all embarrassment. The second section of the Act referred
to provides that "in an action against any person for the
recovery of money received by such person in a fiduciary
capacity, or to the use of another, judgment for the plaintiff,
whether the same be by default or after verdict, may be made
payable in the same kind of money or currency so received
by such person." The next section provides for enforcing by
execution the payment of the judgment according to its terms.

By the two hundred and forty-fifth section of the Probate
Act, it is enacted that "whenever a decree shall be made by
the Probate Court for the payment of creditors, the executor
or administrator shall be personally liable to each creditor for
his claim or the dividend thereon, and execution may be
issued on such decree, as upon a judgment in the District
Court, in favor of each creditor, and the same proceedings
may be had under such execution as if it had been issued from
the District Court."

The proceedings instituted by the plaintiff, as a creditor of
the estate of the deceased, against the executor, was in the
nature of an action for the recovery of the money which he
had in his hands in a fiduciary capacity, and to which the
plaintiff was entitled to the extent of his demand. The decree
made upon the issue joined between the parties was a judg-
ment against the appellant as the executor of the estate, and
in order to render it at once effectual against him individually
the statute has declared that he shall be personally liable for
the payment decreed to be made.

The conclusion to which we come is that the appellant as
the executor of the last will and testament of the deceased
received the money of the estate collected by him in a fidu-
ciary capacity and as the trustee for the creditors, and for the
legatees or distributees under the will, and the same held in
his possession to be paid out and distributed under the direc-
tion of the Probate Court, in the mode provided and required
by the law ; and that the proceedings had in the Probate
Court to that end was in accordance with the law in its letter
and spirit ; and we also hold the executor's plea of a tender to

the plaintiff of the sum due him in lawful money of the United States to be insufficient; because, by the laws of the United States, there was at the time of the alleged tender more than one kind of lawful money of the United States, one of which kinds in particular the plaintiff was entitled to have in payment of the amount due him. The answer does not show that this particular kind of money was tendered, and therefore the tender as pleaded must be deemed insufficient.

The decree is affirmed.


SAWYER, J., dissenting.

D. C. Broderick, in his liftetime, was indebted to respondent upon an ordinary promissory note. Upon his decease the debt survived against the estate, and the full amount was tendered to the respondent by the administrator. The administrator represents the estate until it is settled up, the debts are paid, and the assets distributed. Broderick was entitled to pay the debt in any money that the law makes a legal tender in the payment of debts. The death of Broderick did not place the respondent in any better position than he occupied during the lifetime of the deceased, and the estate was entitled to discharge the debt in any kind of money that Broderick would have been entitled to pay it in, were he alive. The administrator represents the estate and not the creditor. He is not in any just sense a trustee holding a specific piece of property, or any specific fund belonging to the respondent which he is entitled to receive in kind. Nor is he a trustee of the creditor in any sense other than that he has charge of the assets of the estate out of which the respondent is entitled to have his debt discharged. The respondent is merely a creditor of the estate, and his demand is a debt, pure and simple, due from the estate and payable in any kind of money made by law a legal tender in payment of debts. The creditor has no right to share in any profits or advantages gained by the estate arising from the management of its funds, no matter by what means they accrue. If the estate is solvent, he is entitled to

55

the full amount of his debt, but under no circumstances can he get more. He is not entitled to have any portion set off to him in kind. He is entitled to lawful money, such as is a legal tender in payment of all other debts, and when he obtains that his contract is satisfied according to its terms. His demand rests in contract, and his bond is fully satisfied. Can he ask more? Upon what principle does he stand in a better position than those who are creditors of the living?

So, also, a legatee of a specific sum, payable in money, would probably stand in the same position. When the debts are paid, he becomes a creditor of the estate to the amount of the sum bequeathed.

Residuary legatees and heirs, may, perhaps, occupy a different position, for after the debts of the estate, and all specific legacies are paid, the remainder of the *estate itself* is theirs. But if they do stand in a better position than creditors, it is because the estate itself is theirs, and the executor, or administrator, is simply its custodian, and is bound to turn it over to the real owners. He does not stand in the relation of debtor to the heirs and residuary legatees. He is simply custodian of the specific property of which they are the owners. The money and property itself remaining in his custody, after paying the debts and specific legacies, belong to them, and are to be distributed in kind to the real parties entitled, under the direction of the Probate Court. But it is not necessary to determine the question as to heirs and residuary legatees at this time. They are only referred to, to show that their relation to the estate is entirely different from that of a mere contract creditor, and that there are reasons why they may be entitled to receive the specific property received by the executor, whether money or otherwise, that do not apply to creditors as such.

In my judgment there is nothing in this case to relieve it from the operation of the Act of Congress making treasury notes a legal tender in the payment of debts. It will be time enough to determine whether or not the last clause of section two hundred of the Practice Act, relating to the recovery of

moneys received in a fiduciary capacity, and to suits for moneys had and received to the use of another, irrespective of any express agreement to pay in a specific kind of money, is repugnant to the Act of Congress, when that question properly arises. In my opinion it does not arise in this case.

If, then, the Act of Congress is to govern contracts made before, as well as those made after its passage, the order directing the executor to pay the debt due respondent in gold coin is erroneous, and ought to be reversed. But the question as to the effect of the Act of Congress on antecedent contracts is pending in another case, which we are not yet prepared to decide, and as the majority of the Court decide this case on the assumption, adopted for the purpose, only, of their present decision, that the Act controls such antecedent contracts, I express no opinion upon the point at this time.

Mr. Chief Justice SANDERSON expressed no opinion.