BERNARD S. FOX, GUARDIAN OF THE PERSON AND ESTATE OF CATHARINE FOLEY, A MINOR v. P. O. MINOR, AND J. R. WILSON.

TRUSTEE OF EXPRESS TRUST.—A guardian of an infant, appointed by the Probate Court, is not a trustee of an express trust within the meaning of section six of the Practice Act.

PARTY PLAINTIFF.—A guardian of an infant cannot sue in his own name to recover money due the infant. Such action must be brought in the name of the infant by his guardian.

GUARDIAN CANNOT DISPUTE LEGALITY OF HIS APPOINTMENT.—One who has been appointed guardian of an infant minor by the Probate Court, and has accepted the appointment, and by virtue thereof become possessed of the infant's estate, is

estopped from denying the jurisdiction of the Court or the legality of his appointment.

Judgment on Bond of Guardian.—In an action against the sureties upon a bond given by the general guardian of an infant minor, but not made payable in any specific kind of money, a judgment should not be rendered payable in gold coin.

Appeal from the District Court, Third Judicial District, Santa Clara County.

On the 22d day of May, 1861, the Probate Court of Santa Clara County appointed the defendant, John R. Wilson, guardian of the person and estate of Catharine Foley, a minor under the age of fourteen years. Said defendant qualified and gave a bond, with the defendant Minor and one H. C. Melone as sureties, and letters of guardianship of the person and estate of said Foley were issued to him. Wilson continued to act in the capacity of guardian until the 25th day of March, 1865, when he tendered his resignation, and the same was, on the 6th day of May, 1865, accepted by the Probate Court. During his guardianship, Wilson received and collected for and on account of his said ward, the sum of two thousand dollars, in gold coin of the United States, which he failed to invest or employ for the benefit of his ward, either under the directions of the Probate Court or otherwise, but used the same for his own gain. Before accepting Wilson's resignation, the Probate Court investigated his accounts and found him indebted to his ward in the sum of two thousand dollars. After Wilson's resignation had been accepted, the Probate Court appointed Bernard S. Fox, the plaintiff, guardian of the person and estate of said Catharine Foley, who qualified and received letters of guardianship. This action was brought by said Fox upon the bond of Wilson, to recover the money due his ward. The plaintiff in the action was " Bernard S. Fox, guardian of the person and estate of Catharine Foley, a minor." The suit was commenced August 28th, 1865. The bond of Wilson and his sureties was filed in the Probate Court May 27th, 1861. The following is a copy of the bond :

" Know all men by these presents: That we, John R. Wilson, Henry C. Melone, and Peter O. Minor, are held and firmly bound unto Catharine Foley, minor, in the sum of four thousand dollars, lawful money of the United States of America, to be paid to the said Catharine Foley, minor, for which payment well and truly to be made, we bind ourselves jointly and severally firmly by these presents.

" Sealed with our seals, and dated this 21st day of May, 1861.

" The condition of the above obligation is such, that whereas application has been made to the Judge of the Probate Court of the County of Santa Clara, State of California, for the appointment of John R. Wilson guardian of the person and estate of the said Catharine Foley. Now, therefore, if the said John R. Wilson be appointed such guardian, and shall faithfully perform the duties of his trust according to law, and shall:

" First—Make a true inventory of all the estate, real and personal, of his said ward, that shall come to his possession or knowledge, and shall return the same within such time as the said Judge shall order;

" Second—Shall dispose of and manage all such estate according to law and for the best interest of said ward, and faithfully discharge his trust in relation thereto, and also in relation to the care, custody, and education of said ward;

" Third—Shall render an account on oath of the property, estate, and moneys of said ward in his hands, and all proceeds or interest derived therefrom, and of the management and disposition of the same, within one year after his appointment, and at such other times as the Court shall direct; and

" Fourth—At the expiration of his trust shall settle his accounts with the Probate Judge or with the said ward, if she be of full age, or with her legal representatives, and shall pay over and deliver all the estate, moneys and effects remaining in his hands or due from him on such settlement, to the person or persons who shall be lawfully entitled thereto;

" Then this obligation shall be void and no effect; else to remain of full force and virtue.

                    " John R. Wilson,     [seal.]
                    " H. C. Melone,       [seal.]
                    " P. O. Minor."       [seal.]

" State of California,    }
        " County of Santa Clara. }

" H. C. Melone and Peter O. Minor being duly sworn, each for himself says that he is a resident in said State and is worth the sum of four thousand dollars, over and above all his just debts and liabilities, exclusive of property exempt from execution.

                    " H. C. Melone,
                    " P. O. Minor."

" Subscribed and sworn to before me, this twenty-first day of May, 1861.

            " Geo. M. Yoell, Notary Public."

" Approved this twenty-second day of May, 1861.
                " John H. Moore, County Judge,
            " And *ex officio* Judge of the Probate Court."

" Filed May 27th, 1861.
                        " John B. Hewson, Clerk.
" By Levi P. Peck, Deputy Clerk."

The judgment of the Probate Court upon the accounts of Wilson was rendered May 6th, 1865. The defendants demurred to the complaint, because the action was brought in the name of the guardian as such, and not in the name of the ward by her guardian. The Court below overruled the demurrer. Plaintiff recovered judgment for two thousand dollars, payable in gold coin, and defendants appealed.

*Frederick Hall,* for Appellant Minor, and *J. M. Williams,* for Appellant Wilson, argued that the action should have been brought in the name of the ward by her guardian; and cited Sec. 40 Guardians' Act; 19 Cal. 629; 20 Cal. 659; 1 Pet.

46 ; and 3 Hill, 612 ; and that the guardian was not the real party in interest, and was not the trustee of an express trust; and cited 10 Paige, 239 ; and Morris, Iowa, 436. They also argued that the Court below had no authority to render a judgment for gold coin, because the bond was dated before the passage of the Specific Contract Act, and there was no identity of any particular money as a trust fund; and cited *Lathrop* v. *Bampton*, 31 Cal. 17. They also claimed that Wilson had never petitioned to be appointed guardian, and that the Probate Court had therefore never acquired any jurisdiction to make the appointment, and the same was void.

*S. O. Houghton*, and *J. A. Yoell*, for Respondent, argued that the action was properly brought in the name of the guardian ; and cited Practice Act, Sec. 6 ; and Act concerning guardians, Sec. 162 ; and that a general guardian had all the elements of a trustee of an express trust, and had a qualified property in the proceeds of the action, under the statute and at common law, and in that respect differed from a guardian *ad litem*, who had no interest in or claim of control of the subject matter of the action. They argued also that defendants could not raise any objections to the regularity or sufficiency of the proceedings of the Probate Court in the appointment of Wilson ; and cited *Gonfier* v. *Puymirol*, 19 Cal. 629 ; and *People* v. *Norton*, 5 Selden, 176. They further argued that the judgment for gold coin was right, because the money was received in a fiduciary capacity. To show that the action was properly brought in the name of the guardian, they made the following points and cited the following authorities :

When the complaint shows that the action is by the trustee for the benefit of his *cestui que trust*, and that defendant would be protected by the judgment, the action is allowed in the name of the trustee. (*Fenn* v. *Craig*, 3 Younge and Coll. 216 ; Story's Eq. Pl., Sec. 150 ; and 2 Paige, 18.) The party having the legal title can sue. (*Mellen* v. *Hamilton Co.*, 17 N. Y. 609.) An executor or administrator may sue in his own name, or as executor, for the debt due his testator or

intestate at the time of his death. (2 Selden, 168; *Pugh* v. *Currie*, 5 Saund. 433; 19 Barb. 473; 9 Wend. 302; and 9 How. Pr. 11.) The analogy between an executor and an administrator and a guardian is too close to be disregarded. A guardian has title to the possession of his ward's estate, both real and personal, and cannot be ousted of it. (4 Bac. Abr. 557.) Fox is not a mere nominal trustee, but the party to whom the money must come. (*Maulin* v. *Maulin*, 2 John. Ch. 239.)

By the Court, SAWYER, J.:

A guardian appointed by the Probate Court, under the Act which provides for the appointment and prescribes the duties of guardians, is not a trustee of an express trust, within the meaning of section six of the Practice Act. Under that Act the Probate Court is vested with the same jurisdiction over the persons and estates of minors who have no testamentary guardians, as was vested at common law in the Court of Chancery. At common law, the King, as *parens patria*, was considered to have the care of all persons who were unable to take care of themselves, and such care was exercised by the Court of Chancery. Upon petition or bill showing that a minor was without any testamentary or other legal guardian, that Court took charge of his person and estate, and cared for both by appointing a guardian of his person and estate. Such minors became the wards of the Court, and the guardian appointed by the Court was but an officer of the Court, and held responsible to it as such. The Court was, in effect, the guardian, and the nominal guardian was but the agent through whom the Court acted, and to whom the Court delegated the execution of the trust. In like manner, a guardian appointed by the Probate Court is an officer of that Court, and exercises only a delegated trust. His relation to the Court and the minor is in some, though not all, respects of the same legal complexion as that of an executor, or administrator towards the Court, estate and heirs of a decedent, neither of which is

within the definition of a trustee of an express trust, as given in the sixth section of the Practice Act. It is possible, as contended by respondent, that there is no good reason why a guardian should not be placed, in respect to his capacity to sue, upon the same level as executors and administrators; but it is clear that such is not the case. So far as the Practice Act is concerned, when not a trustee of an express trust within the meaning of section six, the capacity of a guardian to sue in his own name, if at all, is limited to actions for the injury or death of his ward (Sec. 11), while executors and administrators are expressly authorized to sue in their official character without joining the person beneficially interested. (Sec. 6.)

The reason upon which the distinction is based may be that executors and administrators are strictly and technically representatives of the deceased, while guardians are not technically representatives of anybody. They simply stand in the position of protectors. The guardian is the counsel assigned by operation of law to conduct the suit. (*Devore* v. *Pitman*, 3 Mo. 187.) If a guardian were permitted to maintain an action in his own name, there might be two suits pending at the same time for the same cause of action—one in the name of the infant, and another in the name of the guardian—and the determination of the question in the suit brought in the name of the guardian alone might not protect the defendant from further litigation in the name of the ward. (*Bradley* v. *Amidon*, 10 Paige, 239.)

At common law, and in equity, an infant was required to sue in his own name, but by his guardian or next friend. (1 Chit. Pl. 284; *Bradley* v. *Amidon*, 10 Paige, 235; *Hanly* v. *Levin*, 5 Ohio, 228.) The practice of suing by guardian is expressly continued by our Practice Act. "Where an infant is a party he shall appear by guardian" (Sec. 9); and section ten provides for appointing a guardian "where an infant is a plaintiff," or a "defendant." These provisions for appointing guardians refer to those cases where there is no general guardian, or where, for any other sufficient reason, a guardian *ad*

*litem* is required. But these provisions contemplate that the infant in person shall be a party to the suit, although he appears by guardian, as adults appear by attorney. Would it be pretended that an action could be maintained against a guardian in his own name alone upon a cause of action against his ward only? What better reason is there for permitting him to sue alone, than for permitting a suit to be maintained against him in his own name, on a cause of action against another party? The Practice Act upon this subject, then, so far as the guardian is concerned, is in strict harmony with the practice at common law; and, unless expressly modified by some other statutory provision, it must govern. It also provides that an action, with certain specified exceptions, of which this is not one, shall be prosecuted in the name of the real party in interest. (Sec. 4.) The ward is the real party in interest. The only other provisions of the statute bearing upon the question, to which our attention has been called, are contained in sections sixteen and forty of the Act concerning guardians. Section sixteen provides, that " every such guardian shall also settle all accounts of the ward, and demand, sue for and receive all debts due him, or may, with the approbation of the Probate Judge, compound for the same, and give a discharge to the debtor on receiving a fair and just dividend for his estates and effects; and he shall appear for and represent his ward in all legal suits and proceedings, unless when another person is appointed for that purpose, as guardian or next friend." (Stats. 1850, p. 270, Sec. 16; Hittell, 3,377.) But this proviso does not say that the suit shall be in the name of the guardian. It simply designates the powers and duties of the guardian, and is only a re-enactment of the common law upon the subject. There is nothing in this section inconsistent with the provisions of the Practice Act, which contemplates that the suit shall be in the name of the infant— the real party in interest. And those provisions are not to be construed as repealed unless by some express provision, or by necessary implication. Besides the express provision of section forty of the same Act shows that no such change was

contemplated, especially with reference to suits on a guardian's bond. This section provides that "every bond given by a guardian shall be filed ＊ ＊ ＊ ＊ and in case of the breach of any condition thereof, may be prosecuted in the name of the ward for the use and benefit of such ward, or of any person interested in the estate." (Ib. 274, Sec. 40 ; Hittell, 3,401.) This point was directly decided by the Supreme Court of Iowa in a similar suit, under a statutory provision in all respects substantially like section sixteen of our Act, and it was held that the suit could not be maintained in the name of the guardian alone. (*Anderson, guardian of W. P. Anderson* v. *Cameron*, Morris, 437.) We think a suit on the bond can only be maintained in the name of the infant, the real party in interest, and that the complaint states no cause of action in favor of the plaintiff. It has been a very general practice in this State—from abundant caution, perhaps—to have a guardian *ad litem* appointed in pursuance of section eleven of the Practice Act, even where there is a general guardian, the general guardian being usually appointed when there is no objection to his acting. But this practice is held not to be necessary when there is a general guardian who has been duly appointed, against whom no objection lies. (*Gronfier* v. *Puymirol*, 19 Cal. 632 ; *Spear* v. *Ward*, 20 Cal. 673.)

There are some other points presented by the record which have been duly argued, and which will necessarily arise should a new suit be brought in the name of the proper party, and for that reason we will dispose of them now.

Neither Wilson nor his sureties can be heard to say that Wilson was not legally appointed guardian. Having accepted the appointment, and by virtue thereof become possessed of the minor's estate, it would be strange indeed if he could now dispute the jurisdiction of the Court, and under the pretense that the Court had acted without authority, retain the estate of his ward. By accepting the appointment and the estate, Wilson placed himself within its jurisdiction and became an officer of the Court, and responsible to it for the faithful performance of his trust, and he is forever estopped by the record

from denying his accountability. (*People* v. *Norton*, 5 Seld., 9 N. Y., 179.)

The judgment of the Probate Court is conclusive against Wilson and his sureties alike. We so held in *Irwin* v. *Backus*, 25 Cal. 214, and we adhere to that decision.

The District Court was not authorized to enter a judgment payable in gold coin against the sureties, and in this respect there was error. The action is not upon a contract "for the direct payment of money 'made payable in a specific kind of money or currency." The obligation is to pay "the sum of four thousand dollars, lawful money of the United States," without otherwise specifying the kind of money. The condition was that Wilson should perform his duties as guardian, not that the obligors would perform Wilson's duties. It may be that Wilson as guardian in a proper suit can be compelled to pay over to the infant the amount of money received by him in his fiduciary capacity, in the specific kind of money received; but in a suit on the bond the sureties are entitled to stand on the terms of the undertaking. The only recovery that can be had on the bond is the damages resulting from Wilson's failure to discharge his duties in the mode prescribed by law, and the damages can only be required to be paid in money generally according to the terms of the bond.

Judgment reversed, with directions to the District Court to dismiss the action.

Mr. Justice RHODES, being disqualified, did not participate.

SANDERSON, J., dissenting :

Being unable to agree with my associates in the conclusion which they have reached, I will suggest briefly the grounds of difference between us.

I agree with them in holding that the action should have been brought in the name of the ward, but I do not think it follows that the action should be dismissed. If, as we hold, the action should have been brought in the name of the ward

by her guardian, it follows that the latter is a proper and necessary party to the record. This is not then a clear case of a suit brought by the wrong party, but is, instead, a case where one of two proper parties has been omitted. If so, the omission may be supplied by amendment. "The Court may, in furtherance of justice, and on such terms as may be proper, amend any pleading or proceeding by adding or striking out the name of a party." (Prac. Act, Sec. 68.) Our statute touching amendments is wisely indulgent and the Courts should not be less. There is no satisfactory reason why the ward cannot be added as a party and the action allowed to survive the judgment of this Court.

Suppose the Statute of Limitations had run pending the present action, and would therefore be available to the defendants in bar of a second action, would not this Court have the power to save the cause of action from the bar of the statute by allowing the requisite amendment? To do so would be "in furtherance of justice," and not to do so would be very much like a denial of justice, yet if it could be done in the event supposed it can be done now. To allow the amendment would not force the statute; on the contrary it would be giving effect to its letter and spirit. Parties should not be sent out of Court and subjected to the costs and hazards of a second action on a mere technicality which can be obviated by amendment. It may not be so in the present case, but any one can readily perceive how prejudice may result from such a course. That the administration of justice can be subserved or advanced by such a course, it is presumed, no one will pretend.

I also agree with my associates in adhering to the rule in *Irwin* v. *Backus*, but I differ with them as to the consequence which follows:

*Irwin* v. *Backus* was the case of an administrator, and the action was upon his official bond; but it is not therefore distinguishable from this. On the score of principle the two cases are identical. Administrators and guardians are alike

officers of the Probate Court, and are alike charged with the execution of a delegated trust. In legal effect their bonds are the same, and their sureties, in all legal respects, stand upon the same level. Hence, whatever was said in *Irwin* v. *Backus*, is no less applicable .to the present case. It was there said : " As a general rule, sureties upon official bonds are not concluded by a decree or judgment against their principal unless they have had their day in Court or an opportunity to be heard in their defense ; but administration bonds seem to form an exception to this general rule, and the sureties thereon, in respect to their liability for the default of the principal, seem to be classed with such sureties as covenant that their principal shall do a particular act. To this class belong sureties upon bail and appeal bonds, whose liability is fixed by the judgment against their principal. This distinction seems to be founded upon the terms of the obligation into which the sureties upon an administration bond enter, which are that their principal shall faithfully perform all the duties imposed upon him by the nature of his trust, and will account for and pay over all money which may come into his hands pursuant to the orders and decrees of the Probate Court. The account must be rendered to and settled by the Court, and the money must be paid out and distributed by and pursuant to the orders and decrees of the Court, and the undertaking of the sureties is that their principal will do all this. * * * * Such are the terms of the contract, and upon the refusal of the administrator to obey such order or decree the liability of the sureties attaches, and they are bound to make good the default of their principal, and cannot go behind the decree to inquire into the merits. They .may show in defense that the bond was not made ; or that the decree was not made, or if made, that the same has been obeyed ; or that the same was obtained by fraud or collusion ; but they cannot show that the Court has erred in making the decree, or that no assets ever came into the possession of the administrator, although the Court has so found and adjudged. If any error has been committed, a remedy is afforded by appeal. Until the order or decree is

reversed, it is equally conclusive upon the administrator and his sureties."

Strike from the foregoing language the word "administrator" and substitute the word "guardian," and there will be nothing left which is not strictly applicable to the present case. This my associates admit when they say: "The judgment of the Probate Court is conclusive against Wilson and his sureties alike. We so held in *Irwin* v. *Backus*, 25 Cal. 214, and we adhere to that decision." After the use of such language one would naturally expect to find the guardian and his sureties standing, at the out-come, upon the same level as to the order of the Probate Court which was made in this case, yet it is not so, for it is expressly determined that the guardian may be compelled to obey the order of the Probate Court and pay gold coin, but that his sureties cannot. Now I respectfully submit that both of these propositions cannot be true.

*Irwin* v. *Backus* says: "That the order of the Probate Court, however erroneous, is alike conclusive upon the guardian and his sureties, until reversed on appeal." *Fox* v. *Minor* (the present case) says: "What *Irwin* v. *Backus* says upon this subject is true beyond a doubt, but still I am of the opinion that the order of the Probate Court, although it has never been reversed on appeal, is not conclusive upon the guardian and his sureties alike, and hence the latter cannot be made to pay gold, although the former can." Now I will not undertake to say that these two cases cannot be reconciled; but I may be permitted to say that the process of reasoning by which such a result can be reached does not occur to me.

What do we mean when we say that an order or decree is alike conclusive upon two or more parties? Do we not mean that the one is as much bound by it as the other? That the one cannot dispute it if the other cannot? Such is my understanding, and such, in my belief, is the understanding of the profession generally; and I therefore submit that under the rule in *Irwin* v. *Backus*, the order of the Probate Court in

this case is as conclusive upon his sureties as it is upon the guardian himself.

It must be borne in mind that this is not an appeal from the order of the Probate Court, but is a collateral action, in which the plaintiff counts upon the order·as a part of his cause of action, and brings it forward as evidence in support of his count.   If the order was here on appeal we might review it on the score of error; but in its present relation we cannot notice any error if it exists.   If the Probate Court had no jurisdiction to make the order, we could entirely disregard it as being null and void; but we cannot disregard it or modify it on the ground of error.   This doctrine is too familiar to require argument or cases.   For all the legitimate purposes of the present case it might therefore be conceded that the order in question is erroneous, and yet the result remain the same; but it is not erroneous, as we shall presently see, unless a previous decision of this Court is also erroneous.

The rule in *Irwin* v. *Backus* proceeds upon the theory—and it can be maintained upon no other—that the law of the land and the subsequent orders of the Probate Court, made within its jurisdiction, are a part of the bond of the administrator or guardian—as much so as if they were written out in terms in the body of the instrument.   Hence, the contract of the sureties is not a mere promise to pay unliquidated damages.   It is something more—it is a promise to pay whatever the Probate Court, acting within its jurisdiction, may direct their principal to pay, and according to the rule in *Irwin* v. *Backus* they cannot question the terms or conditions of the order, except upon appeal directly from the order, unless it is wholly void for the want of jurisdiction.   Whenever, then, the Probate Court makes an order it immediately becomes binding upon the sureties, according to its terms, by force and effect of the peculiar terms of their contract.   If the Court directs the guardian to pay a certain sum of money and he does not do it, they must pay that precise sum, not as unliquidated damages arising from the default of their principal, but as a liquidated sum which they have agreed to pay, without any

controversy as to the amount, in a certain event, to wit, the failure or neglect of the guardian to pay it. So, by the same conditions, the question whether the sureties can be made to pay in gold does not depend upon the fact whether that word is found in their bond when considered as something apart from the order of the Probate Court, but whether it is found in the order of the Court. They have agreed that the Court may make any lawful order which it deems proper, and that, when made, it shall become one of the conditions of their contract, and that they will perform it according to its terms if their principal does not. This is but the application of the rule in *Irwin* v. *Backus* to the new conditions wrought by the introduction of a second kind of money, and the power conferred upon the Courts by the Specific Contract Act to decree payment in one or the other, or generally, according to the law of the case. There is and can be no distinction between the liability of the sureties to pay the precise amount fixed by the order of the Court, and their liability to pay it in the kind of money which is specified in the order. If they can be made to pay, without controversy or cavil, the precise sum fixed by the Court, it is because they have agreed to do so. If they can be made to pay it in a particular kind of money it is also because they have agreed to do so. If they have agreed to do the former, by parity of reason they have agreed to do the latter, for the latter is as much within the terms of their undertaking as the former. Neither promise is found in the bond more than the other. The germ of both is there and when touched by the wand of the Court it assumes such form as the magician may direct.

It will be perceived that in my judgment my associates have fallen into the error of assuming the very point in controversy. They assume that the bond alone determines the question, and that, inasmuch as the kind of money is not there specified, the sureties cannot be made to pay gold. Apply the same reasoning to the other question of amount, and what is the result? There is no agreement there that they will pay the precise sum fixed by the order of the Probate Court;

hence, by parity of reason, they are not bound to pay that precise sum. Yet my associates agree with me in holding that they are bound, nevertheless. So the argument proves too much. The truth of the matter is, that the bond alone does not constitute the full measure of their liability. It takes both the bond and the order to do that, which is obvious from the fact that without the order of the Court they are not bound to pay anything. Until the Probate Court has adjudged their principal liable, their liability does not take form, and then it takes precisely such form as the Probate Court may lawfully direct. So, when suit is brought, the plaintiff counts on the order of the Court, and relies upon it as the true measure of their liability. In short, the order of the Probate Court contains the whole meat of the matter, and the bond serves only as the connecting link between it and the sureties.

By way of further illustration : According to *Irwin* v. *Backus*, the bond in this case stands upon a level with an appeal bond. On an appeal bond the sureties undertake that their principal will pay the judgment if affirmed, or, if affirmed only as to part, then that he will pay such part. Now, suppose the judgment of the Court below requires payment in a specified kind of money, as it may lawfully do. (I am aware that in such case the Legislature, out of an abundance of caution, has provided that the appeal bond shall call for the same kind of money which is specified in the judgment ; but for the present purpose I assume that no such provision of law exists, and that the appeal bond does not call for a particular kind of money.) Can there be any doubt but that the sureties could be made to pay gold in an action upon the bond, if it is averred in the complaint that the judgment was a gold judgment and that it was affirmed as a gold judgment by the appellate Court? Their agreement in legal effect is that they will pay or satisfy the precise judgment which the appellate Court renders. Now they cannot perform their promise by paying in legal tender notes, for legal tender notes will not pay or satisfy a coin judgment. Again, suppose the

bond is in keeping with the judgment and calls for gold. Suppose the appellate Court determines that the plaintiff is not entitled to a gold judgment, but only a general judgment What is the result? Do the sureties go scot free? If they have a right to stand upon the terms of their bond in the sense in which it is put by my associates, they may, for the appellate Court has not affirmed the gold part of the judgment, and therefore they are not compelled to pay gold; and as for legal tender notes, they have never agreed to pay them. This cannot be so, and hence what I claim follows. The bond alone does not determine what the contract is, in the sense in which we are now considering that question. In the case of the appeal bond, it takes the judgment of the appellate Court also to determine that question; and in the case at bar it takes the order of the Probate Court; and in each case this result springs from the very terms and nature of the undertaking; and if suit is brought the plaintiff in the one case counts on the judgment of the appellate Court, and in the other on the order of the Probate Court, as a finality which fixes and determines, in all respects, the liabilty of the sureties.

That the Probate Court did not err in making the order, if that question could be considered for any purpose in connection with the present case—is shown in the case of *Magraw* v. *McGlynn*, 26 Cal. 420. That case was an appeal from an order of the Probate Court directing McGlynn, the executor of Broderick, to pay a claim, held by Magraw against the estate of Broderick, in gold coin, being in that respect precisely the same order which was made in the present case. The only question was whether the Probate Court had erred in directing the claim to be paid in gold coin. A majority of this Court, after mature deliberation (for there was a dissenting opinion showing a conflict of views between the members of the Court) held the order valid, and near the close of a long argument said: " In this case the money in the hands of the executor was gold coin of the United States, and the decree requires this kind of money to be paid to the creditor. This decree is in consonance with justice, and, in our judgment, is

authorized by the law of the land." This language has the
ring of true metal, yet the creditor in that case had not given
.Broderick gold, so far as the record showed. The claim was
in the form of a promissory note dated at New York in 1858,
where bank bills were the ordinary currency, and did not call
for gold. Apply the language of the Court to this case: "In
this case the money received by the guardian was in gold coin
of the United States, and the decree requires the same kind of
money to be paid to his successor for the benefit of the ward.
This decree is in consonance with justice, and, in our judg-
ment, is authorized by the law of the land." To such lan-
guage no right thinking mind hesitates to add "Amen;" for it
is just and right that he who has, in a place of trust and con-
fidence, obtained possession of the entire estate of an orphan
child should be made to account to her for its full value and
not allowed to speculate upon her trust and confidence and,
under the pretense of legal right, strip her of one third of her
estate.

We have, then, an order in which there is neither want of
jurisdiction nor error on the part of the Court by which it
was made, for I do not understand my associates as overruling
the case of *Magraw* v. *McGlynn*, but quite the contrary.
Then this anomalous result follows: we have a joint and sev-
eral cause of action against the defendants, and we have not;
for, while the bond makes a joint and several liability against
all the defendants, the order of the Probate Court, which is
admitted to be a legal and proper order, unmakes it. But it
is suggested, in the opinion of my associates, that the gold
part of the order can be enforced against the guardian in a
separate action into which the word "bond" shall not be
allowed to intrude and work such anomalous results. If the
order for gold can be enforced against him in any action, why
not in this? The defendants have not alleged a misjoinder
either of parties or causes of action, nor do I see how they
could. Admitting, then, that the guardian may be made to
pay gold, but the sureties cannot, why not so adjudge in this
case? Is there any legal impediment in the way? None has

been suggested. Separate judgments against different defend-
ants are not wholly unknown to our jurisprudence. Besides,
if we have a mongrel cause of action, why not have a mongrel
judgment to match? It is a well settled principle that the
judgment should follow the case, on the same line, and match
it in all respects. There is certainly nothing in the way of
form to prevent such a course, for we have abolished all dis-
tinctions in form, and the plaintiff now recovers upon what he
says, and not upon the form in which he says it. The plaintiff
now states the facts of the case precisely as they exist, to the
entire exclusion of fancy or fiction. If the ward were to bring
another action against the guardian, what more could she say
than is said in the present complaint? She might say less, it
is true; but if as to him she has said more than is necessary,
no harm is done. So, upon the theory of my associates, I am
unable to perceive why the ward may not obtain full relief—
and separate relief, if necessary—against the guardian and his
sureties in this action. But I differ from them entirely both
as to the law and the logic of the case. I think the ward is
entitled, when made a party, to a gold judgment against all of
the defendants.

In aid of the theory upon which this case is to be decided,
reference is made to the well settled principle that sureties
have a legal right to stand upon the precise terms of their
contract. It is true that sureties have a legal right to stand
upon the terms of their undertaking, and so, I believe, has
every one else. But the claim that the sureties in this case
are but asserting that right when they seek to avoid the pay-
ment of coin, is a perversion of that rule. To the unsophis-
ticated moralist, who regards the golden rule as the aggregate
of all law, it would seem very much like they were seeking,
by their present course, to avoid the terms of their contract
and to be searching for other terms, better suited to their pur-
pose, in the Legal Tender Act. Their bond was made prior
to the passage of the Legal Tender Act. At that time coin
was the only legal currency—the only kind of money in

17

which obligations could be legally discharged and satisfied.
The terms of their contract, as interpreted by the law of the
land, and as understood by themselves, then meant gold, and
through the beneficent operation of the Specific Contract Act
the Probate Court has been vested with the power to preserve
the language of their contract and make it mean now precisely
what it meant then.    That Act imposes no additional burden ;
it neither lessens nor increases the weight of the defendant's
bond.    What the bond was when made, it still remains, so far
as that Act is concerned.    Let it not be said, then, that they
escape the payment of coin by reason of their right to stand
upon the precise terms of their bond.    Let it be put upon the
true ground.    Let it be said that they avoid the payment of
coin because they have a legal right to pay in paper money,
created by the necessities of a Government struggling for
existence, and not adopted because it constitutes a just medi-
um of compensation in case of existing private contracts, made
in view of a different and greater value as a measure of respon-
sibility.    The ward in this case may complain, with much
reason, if not law, of the working of the Legal Tender Act,
for she is thereby stripped of one third of her estate, in fact
if not in law; but the sureties have no such cause of com-
plaint against the working of the Specific Contract Act, for
that Act, as was said by this Court in *Lane* v. *Gluckauf*, 28
Cal. 293, "but secures an honest observance of their contract,
and prevents them, so far as it can be lawfully done, from
availing themselves of a legal measure of public necessity to
work a moral and private wrong."

The order of the Probate Court being in all respects a valid
order and free from error, under the rule in *Magraw* v.
*McGlynn*, I think it conclusive upon the sureties in all its
aspects, under the rule in *Irwin* v. *Backus*, and that the same
would be true were it erroneous.    I am unable to perceive
how it can be conclusive in part and not conclusive in whole.
If it is conclusive in part, it is for the same reason conclusive
in whole.

I think the case should be remanded, with leave to add the name of the ward as a party.