McCLANAHAN et al., Plaintiffs in Error, v. WEST et al.

1. Judgment: FRAUD. A judgment may be directly assailed for fraud in obtaining it.

2. ——: ——. Query, whether a judgment so obtained can be assailed collaterally.

3. ——: ——: PAROL EVIDENCE. Where, in a suit directly assailing a judgment in partition for fraud, plaintiff's evidence does not tend to prove the charge of fraud, parol evidence is inadmissible to show that plaintiff, who was a defendant in the partition suit, was not served with process therein.

4. ——: ——: ——. The foregoing is true, although the judgment in the partition suit is silent as to the acquisition of jurisdiction by service of process on the defendant therein.

5. **Domestic Judgment:** COURT OF GENERAL JURISDICTION. A domestic judgment rendered by a court of general jurisdiction cannot be impeached by the parties to it, merely because the record is silent as to the acquisition of jurisdiction. Such judgment is equally conclusive on the parties thereto, whether it recites, or whether it fails to recite, that jurisdiction has been acquired.

6. ——: ——: INTENDMENT. Nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so.

7. **Evidence:** FILES : SERVICE OF PROCESS. Files of the papers in the partition suit are competent evidence to show service of process on a party defendant.

8. ——: ——: ——. Such files may be invoked to show lack of such service even as against jurisdictional recitals to the contrary in the record.

9. ——: ——: SUPPLYING WHEN LOST. The files when lost may be supplied by the statutory method, or as at common law, by proving their loss and contents.

10. **Affidavit for Continuance:** ESTOPPEL. A party who, to prevent a continuance, consents to the reading in evidence of the affidavit for continuance, is thereafter estopped to object to its admission.

11. **Practice:** SERVICE OF PROCESS. The evidence in this case examined and *held* to show, irrespective of the parol evidence, due service of process in the partition suit on a defendant therein.

12. ——: INCONSISTENT POSITIONS. A defendant in a partition suit, on whom no service of process was had and who assails the judgment rendered therein for fraud, cannot have both the money arising from the sale and the land.

13. **Ejectment.** The remedy of one claiming against a sale under a partition proceeding, void on its face, is by ejectment.

14. **Judgment, Irregularity of.** A judgment improperly rendered at the first term of court after service of process is irregular, not void.

15. **Stale Claims:** SUPREME COURT. The supreme court views with disfavor suits to set aside partition sales instituted nearly the life of a generation after the occurrence of the transactions in question.

16. **Married Woman, Correction of Personal Judgment Against.** A judgment which is erroneous, because a personal one, against a married woman corrected by striking out her name from the cost clause thereof.

McClanahan v. West.

*Error to Jackson Circuit Court.*—Hon. T. A. Gill, Judge.

Affirmed.

*James A. Spurlock* for plaintiffs in error.

(1) A court of general jurisdiction in partition cases must pursue the statute to the letter, and the Jackson circuit court acquired no jurisdiction over the plaintiff in this case to make partition of her father's lands till she was first served with copy of the petition of West *et al.*, and notice of its intended presentation, and proof thereof, being first made in open court. This, as appears, was done as to the adult defendant, but not as to the minor defendants. (2) Jurisdiction over the subject-matter and the person must be shown by the records, or the judgment will be void. *Brown v. Woody,* 64 Mo. 547; *Werz v. Werz,* 11 Mo. App. 26; *State v. St. Louis,* 1 Mo. App. 503. (3) In the case of *Hunter v. Hunter,* 50 Mo. 452, the court says: " When the case is one of fraud, the statute will, in no case, commence to run until the discovery of the fraud. This was always the equity doctrine, and is still the doctrine under our code. What constitutes such discovery is the only question." Story's Equity, sec. 152*a,* and note 2; 3 Cruise, Digest, marg. page 510. If a fraud be perpetrated and means used to conceal it, or prevent the plaintiff from discovering it, the statute of limitations does not begin to run only from time of discovery. Angell on Lim., sec. 183; 2 Greenleaf Ev., sec. 448; *Hyatt v. Wolfe,* 22 Mo. App. 191; *Thomas v. Matthews,* 51 Mo. 107; 80 Mo. 91. This is the law in England, and all the states except New York, and was so held by Judge Story in the case of *Sherwood v. Sutton,* 5 Mason, 143. (4) The deed of West is void on its face. It is a record of the case, and does not recite facts as

required by the statute. Its record imparts no notice to the party defrauded. *Morey v. Staley*, 54 Mo. 419; *Foster v. Brashears*, 55 Mo. 22. (5) It cannot be inferred, because judgment was rendered against a party, that he had notice. *Smith v. Ross*, 7 Mo. 365. (6) The admission of C. J. Barnes' affidavit was only an admission of what he would swear if present; not that it was true or competent. (7) The plaintiff is not bound by limitation. *Rogers v. Brown*, 61 Mo. 191. (8) The whole proceeding and judgment in partition are void for want of notice to the minors, and the judgment was rendered on publication at the first term. 27 Mo. 298. (9) The trial court committed error in rendering a personal judgment against a married woman.

*Gage, Ladd & Small* for defendants in error.

(1) This action, although somewhat disguised in form, is really a collateral attack upon the judgment of a court of general jurisdiction. In such cases, the record is conclusive and unimpeachable, and no evidence will be admitted to overturn it. And this is true, even although the judgment may not recite that jurisdiction of the person had been duly acquired. *Freeman v. Thompson*, 53 Mo. 183; *Lackland v. Stevenson*, 54 Mo. 111; *State ex rel. v. Williamson*, 57 Mo. 192; *Rumfelt v. O'Brien*, 57 Mo. 569; *Huxley v. Harrold*, 62 Mo. 516; Freeman on Judgments [3 Ed.] sec. 132. (2) But if it can be considered a direct proceeding in equity to annul the judgment, and, in that view, to justify the admission of evidence to contradict the record, still the judgment of the court below was right. Upon the issue as to whether process was served upon plaintiff Nancy, the vast preponderance of the testimony is against her. (3) Plaintiff is estopped. *Austin v. Loring*, 63 Mo. 19; Hermann on Estoppel, secs. 800 and 801. (4) Her guardian, as such, received from the sheriff her share of

the proceeds of this sale, and receipted for it. She is bound by his acts. R. S. 1845, p. 774, sec. 53. The proceeding was under these statutes, as amended by the act of January 25, 1847. Sess. Acts, 1847, p. 106. (5) The statute of limitations is a complete bar to this action. (6) The plaintiff has brought herself within none of the exceptions to the statute prescribing the time in which actions of this kind must be commenced. (7) That the judgment was rendered at the first term is no valid objection to the proceedings. The cause was heard at the first term by consent. *Smith v. Davis*, 27 Mo. 298; *Le Bourgeoise v. McNamara*, 82 Mo. 189. (8) This court will not reverse a judgment otherwise correct because costs have been adjudged against a married woman. *Snell v. Harrison*, 83 Mo. 651.

*Johnson & Lucas* and *C. O. Tichenor* for defendant in error Blair.

(1) A court cannot infer that defendants were not served because the entry of judgment is silent on this point. *Howard v. Thornton*, 50 Mo. 291. The presumption from such an entry, without further evidence, is in favor of jurisdiction. *Moochring v. Kayser*, 21 Ark. 459; *Brawley v. Ranney*, 67 Mo. 283; *Voorhees v. Bank*, 10 Pet. 472. (2) The sheriff's deed, if void, was color of title. West had the whole tract fenced and was in actual possession of every acre from 1861 until 1873, the year in which he died, since which time it has been held by his heirs and vendees. By the revision of March 20, 1866, females became of age at eighteen. Plaintiff did not marry until she was twenty-three. So that West and those claiming under him were in possession for nineteen years after she became of age and before she brought suit. The statute of limitations operates against a minor. Ang. on Lim., secs. 196, 197; *Fairbanks v. Long*, 91 Mo. 628. Although it gives the

minor three years after the disability is removed to
bring suit, yet, under some circumstances, the three
years may be considered as a part of the ten. *Gray v.
Yates,* 69 Mo. 603. In no event could she tack the dis-
ability of marriage to that of infancy. Ang. on Lim., secs.
197, 477; *Gordon v. Lewis,* 88 Mo. 380. Plaintiff must
show not only fraud, but an actual concealment of it.
Ignorance of it will not suffice. *District, etc., v. French,*
40 Iowa, 602 and cases cited; *Humphreys v. Mattoon,*
43 Iowa, 558; *Hunter v. Hunter,* 50 Mo. 452. (3) "The
law of laches, like the principle of the law of the limi-
tation of actions, was dictated by experience and is
founded in a salutary policy. The lapse of time carries
with it the memory and life of witnesses, the muni-
ments of evidence and other means of proof." *Brown
v. County,* 95 U. S. 157; *Landrum v. Bank,* 63 Mo. 86;
*Reed v. Ewing,* 71 Mo. 29; *Schradski v. Albright,* 93
Mo. 48; *State, etc., v. West,* 68 Mo. 232; *Lenox v. Har-
rison,* 88 Mo. 496. Not only did plaintiff delay for
nearly thirty years after the sale before she brought her
suit but she even took her share of the purchase money,
knowing it to be such, which was a ratification. *Highley
v. Barron,* 49 Mo. 106; *Packman v. Meatt,* 49 Mo. 349;
*Brawley v. Ranney,* 67 Mo. 282. (4) The plaintiff
must show the judgment to be unjust; that she had a
defense of which she could not avail herself; that the
judgment ought to have been different; if she does not
a court of equity will not set it aside. In other words
there must be real merit instead of a barren right to
defend against that to which she had no defense; if
there is not, a court of equity will leave her to contend
against it at law as best she can. *Way v. Lamb,* 15
Iowa, 83; *Taggart v. Wood,* 20 Iowa, 236; *Miller v.
Palmer,* 55 Miss. 323; *Fowler v. Lee,* 10 Gill and J. 363;
*Bradley v. Richardson,* 23 Vt. 724; *Gregory v. Ford,*
14 Cal. 138; *Stokes v. Knapp,* 11 Wis. 391; *Lemon v.
Sweney,* 6 Ill. App. 509; *Colson v. Leitch,* 110 Ill. 504;

*White v. Crow*, 110 U. S. 187; *Patch v. Ward*, L. R. 3 Ch. App. 206; *Sauer v. City*, 69 Mo. 46. (5) Mr. John I. Blair, who owns a large part of this tract, was no party to the decree and it is not pretended that he had notice that plaintiff was not served. Purchasers in good faith, not parties, "are protected from secret vices in judgments." *Heard v. Sack*, 81 Mo. 616. The fact that he was willing to pay something to keep from litigation and to have the title, so that his land would sell, is no evidence that he was not an innocent purchaser. (6) The little error made by the clerk in entering the judgment can be corrected in this court. *Hunt v. Railroad*, 89 Mo. 607, and cases cited.

*W. J. Ward* for J. S. West, A. C. West, R. C. Anthony and Bell Weller, defendants in error.

(1) The finding of the issues of fact by the court was in favor of defendants, and the plaintiffs' case was dismissed. The court having the witnesses before it, it was the best judge of their credibility, and the judgment should be affirmed. *Judy v. Bank*, 81 Mo. 404; *Erskine v. Loewenstein*, 82 Mo. 301; *Snell v. Harrison*, 83 Mo. 651. (2) Where the record is silent, every presumption is in favor of the jurisdiction of the court, and that it would not have proceeded if the parties were not properly before it; and as it was not positively shown that plaintiff Nancy was not properly before the court in the partition suit, the judgment of the court should be affirmed; and more especially should that be true in this case, where the weight of the testimony at the trial was largely in favor of the fact that Nancy was properly before the court in the partition suit. *Gates v. Tusten*, 89 Mo. 13; *Applegate v. Mining Co.*, 117 U. S. 255; *Schad v. Sharp*, 95 Mo. 573. (3) The judgment of the lower court should be affirmed, because the testimony of two witnesses as to an event or fact that

occurred more than thirty years ago, and who were grown at the time of its occurrence, should not be set aside in favor of three witnesses, who were children of seven, nine and twelve years at the time the event happened, backed, as the two witnesses are, by the record in the sheriff's book made at the time, the testimony of Bower (for the admitting that he would swear to a fact to force a trial gives the same force to that admission as if the fact were sworn to during the trial by the witness), that he had had the original papers in the partition suit in his possession, and that they showed that plaintiff Nancy had been duly served; and the further fact that every court is presumed to have done its duty. All this must be set aside in favor of the three children, or the judgment affirmed. (4) Plaintiff Nancy accepted her share of the proceeds of her father's land after she became of age, and after she knew the money being received by her was her share of the sum realized from the sale of her father's real estate, and she cannot be heard to complain now. *Highley v. Barron*, 49 Mo. 103; *Brawley v. Ranney*, 67 Mo. 280. (5) While it was wholly unnecessary for the sheriff to set out as he did the court proceedings in the deed made by him under the partition sale, yet the deed would be good without the recital, and, being so, an unnecessary recital in it could do no harm. (6) It is claimed that the judgment should be reversed, because it is a personal judgment against plaintiff Nancy, a married woman, for costs. Under the rule laid down in the case of *Weil v. Simmons*, 66 Mo. 617, this court should so amend the judgment as to relieve Mrs. McClanahan of any liability for costs, and order its affirmance in other respects. (7) There is not a shadow of fraud shown in this case, and as Nancy McClanahan knew that the Wests claimed to own the land sued for under a purchase made at a public sale, and knew this after she came of age and before she married, and knew that they lived

upon and occupied it under that claim and had done so for many years, as she lived there with them, the statute of limitation had run against her years before this suit was brought, even if she had a pretense of a claim.

SHERWOOD, J.—This proceeding, an equitable one, was instituted by plaintiffs in May, 1885, whereby they sought to set aside and hold for naught a judgment and sale in partition, the sheriff's deed and subsequent conveyances, on various grounds set forth in the petition which in substance alleged : William K. Anthony died in 1853, the owner of the land described in the petition; that he left as his only heirs at law, Robert G., Marion, George, Jackson, Lewis, Lillie, and Nancy T.; that soon after the death of said William K. Anthony, his daughter Marion married Thomas West; that in 1854 a proceeding was begun in the circuit court of Jackson county for the partition of these lands, to which all the heirs were made parties; that at the March term, 1855, an order of sale of the lands was made by the court, and at the March term, 1857, the sheriff filed his report of sale, which was presented to be confirmed.

It is alleged that the judgment and proceedings *are void on their face;* that said Thomas West pretended to purchase said lands at said sale for a nominal price; that the plaintiff Nancy T., who some time before the bringing of this suit married her co-plaintiff McClanahan, had no notice of the pendency of said partition proceedings, that she was not served with any process, and as to her they were void.

That the suit was instituted by the said Thomas West who conspired with Robert, one of the Anthony heirs, to cheat and defraud the plaintiff Nancy out of her share of her father's estate; that she was then a small girl, and after the close of the war she inquired of Thomas West, and his wife Marion, what had been done with her father's land, and was told by them that

it had been sold for debt, and that West had bought it at sheriff's sale. It is further alleged that she believed these statements and placed special trust and confidence in them, and was thus thrown off her guard and prevented from making further inquiry.

It is further alleged that West made these false representations with the view to cheat and defraud the plaintiff, and that in order to conceal his deceit and fraud he forbade intercourse with her relations and friends and induced others to keep quiet, and, lest she might discover the fraud, he sent her into Morgan county, telling her that there was a little money coming to her from her father's personal estate, and that her guardian would send it to her when she arrived at her majority.

It is further alleged that plaintiff Nancy never learned of said fraud and concealment until within two years immediately preceding the filing of this petition, when a copy of the petition filed by the Kansas City Belt Railway Company for a condemnation of a part of the land was served upon her. This aroused her suspicions.

It was further stated that Thomas West died in 1873. The petition further states that her guardian, at his settlement in 1870, asked her for receipts, which she gave, but she disclaims any knowledge of their purport; she alleges that she did not understand that she was receipting for her share of her father's land, and she asks if any receipt or conveyance of her share in her father's land is offered in evidence it may be declared void, as she supposed she was receiving only her share of her father's personal estate.

It is further alleged that said partition suit was never prosecuted to a final end; that the record shows that no order of distribution was ever made, and that no deed to the purchaser under the sale therein appears to have been acknowledged in open court as required by law.

The heirs of Thomas West are made parties to the bill, and it is alleged that the widow Marion and the children have sold part of the lands to defendant Shaeffer, who purchased for defendant Blair.

Allegation is further made that West in his lifetime, and his widow and children since, have pretended to purchase or have caused to be purchased by others for their benefit the interest of the heirs of the said William K. Anthony, except that of the plaintiff Nancy, and that they tried to purchase hers, and by so doing admitted her right to one share, as tenant in common, to one-seventh of the lands.

It is further alleged in the bill that the decree in the partition suit is incomplete, fraudulent and void, and that all mesne conveyances from the pretended sale thereunder are fraudulent and void, and plaintiffs claim that they are entitled to the possession of the one undivided one-seventh part of said lands and pray for a decree of possession.

Further prayer is that the said judgment in partition and the sale made in pursuance of the same, and the deed be declared null and void, and be set aside especially as to them; that all intermediate conveyances be declared fraudulent, null and void, especially as to the plaintiffs; and that the possession of the undivided one-seventh part of said lands be adjudged to the plaintiffs, and for other relief.

The answers of the adult defendants were in fact or in effect: *First.* General denials. *Second.* Pleas of the statute of limitations. *Third.* An estoppel arising from the receipt by the plaintiff Nancy after she arrived at her majority, with full knowledge of the facts of her proportion of the proceeds of the partition sale. The replies were general denials. The answer of the guardian *ad litem* of the minors was as usual in such cases. Having heard the testimony in the cause, the lower court dismissed the petition and plaintiffs brought error.

The petition in this cause does not charge that any fraud was used in obtaining the judgment of partition; if this had been done, if it had been charged that fraud was used in the very "*concoction*" of that judgment, it would have been admissible to establish such fraud in the present proceeding; regarding it, in that event, as a direct attack on that judgment. Bigelow on Fraud, 86, 87, 88, 90, 94, 95, 636; Bigelow on Estoppel [3 Ed.] 162, 163; *Payne v. O' Shea*, 84 Mo. 129.

The authorities differ on the point whether a judgment can be attacked collaterally for fraud, or whether it can alone be done in a direct proceeding. Very strong reasons may be urged in behalf of either view. Bigelow on Fraud, 86, 87, 88, 90, 94, 95, 636; Bigelow on Estoppel, 161, 162, 163, 164. The eminent author just cited holds that no just distinction can be taken between the right of a party injured, to attack "a judgment concocted in fraud," whether such attack be directly made or made collaterally. Bigelow, Estop. 164. But it is unnecessary to rule the point now, for the obvious reason that there is no tendency in the testimony adduced by plaintiffs to show fraud in the proceeding or concoction of the judgment, nor of any connection of the defendants therewith. This being the case, parol testimony was wholly out of place to show that plaintiff Nancy had not been served with process in the partition suit. And this is true notwithstanding that the judgment in that suit is silent as to the acquisition of jurisdiction by service of process upon her.

A domestic judgment, rendered by a court of general jurisdiction, cannot be impeached by the parties to it merely because the record is silent as to the acquisition of jurisdiction. Such judgment is equally as conclusive on the parties thereto, whether it recites, or whether it fails to recite, that jurisdiction has been acquired. Nothing shall be intended to be out of the jurisdiction of the superior court, but that which

specially appears to be so.   Freeman on Judg. [3 Ed.] sec. 132; *Crepps v. Durden*, 1 Smith's Leading Cas. [8 Ed.] part 2, 1137 and cas. cited; *Freeman v. Thompson*, 53 Mo. 183; *Lackland v. Stevenson*, 54 Mo. 111; *State v. Williamson*, 57 Mo. 192; *Huxley v. Harrold*, 62 Mo. 516; *Gates v. Tusten*, 89 Mo. 13; *Jeffries v. Wright*, 51 Mo. 215; *Hallowell v. Page*, 24 Mo. 590.

But though parol testimony was wholly inadmissible for the purpose aforesaid, yet it was competent to supply the missing files in the partition cause.   Such files could be supplied by pursuing the method pointed out by the statute, or, as at common law, by proving their loss, and then proving their contents, or any material parts thereof.   For this reason it was that the affidavit filed by the defendants for a continuance on account of the absence of the witness, C. J. Bower, was properly admitted in evidence to show that the missing files in the partition cause showed the service of process on plaintiff Nancy, thus establishing that there was nothing in the lost files at variance with the presumptions incident to, and attendant on, the doings of a court of general jurisdiction.   These files, if in existence, could have been used to contradict the record, if at variance therewith, and to show that no jurisdiction had been acquired; even as against jurisdictional recitals in the record (*Cloud v. Inhabitants*, 86 Mo. 357, and cas. cited; *Milner v. Shipley*, 94 Mo. 106; *Blodgett v. Schaffer*, 94 Mo. 652; *Adams v. Cowles*, 95 Mo. 501); and, for the same reason, secondary evidence of their contents, when lost, was admissible, though if no such secondary evidence had been introduced, those favorable presumptions which always attend the acts and doings of a court of general jurisdiction could still have been invoked in behalf of the judgment in question.

It is claimed, however, by plaintiffs that this affidavit was improperly admitted in evidence, and when

it was offered to be read the plaintiffs objected; but they were in no position to object after they had agreed to admit the affidavit to be read in evidence "for the purpose of a trial." Having done this, having thereby cut off the defendants from obtaining a continuance which otherwise would have gone, they are clearly estopped from now assigning as error what beforehand they agreed should be done.

Parties litigant are not allowed to trifle with the court or with each other; they are not allowed to assume inconsistent positions. Having made their election, and thereby caused their adversary to elect to pursue a certain course, they cannot, after such a course has been pursued at their instance, take advantage of it, deny its validity, and thus "tread back and trip up the heels" of their adversary. *Slack v. Lyon,* 9 Pick. 62; *Brown v. Bowen,* 90 Mo. 184; Bigelow on Estoppel [3 Ed.] 562, 601, 602, and cases cited.

This conclusion renders unnecessary any discussion of the validity of the statute which authorizes the affidavit for a continuance in a *civil* cause to be read in evidence. But, for the sake of argument, it might be granted that the parol evidence, introduced to show that no service of process was had on plaintiff Nancy, was competent, and still the result reached by the trial court could not be successfully questioned, since the great weight of the evidence shows that due service of process was had upon plaintiff Nancy, as well as upon the other three minors; this is established in the most pronounced manner, not only by the parol testimony, but by the sheriff's book, showing service on the minors, as well as by the testimony of the sheriff himself, whose deputy served the process and made report to him when he made the charges in his book, as was his custom. Besides, the record itself shows that George W. Buchanan was appointed guardian *ad litem* for the four minors, and that he filed answers for them. From

which statements *it will be presumed* that the proper
service was had upon the minors, and that the court,
cognizant of this fact, thereupon appointed the guardian
*ad litem;* and it will be presumed, also, that the attor-
ney then appointed guardian *ad litem* would not have
filed an answer for minors who had not been personally
served, as required by law. And then there are the
receipts given by the minors, and by the plaintiff her-
self, after she attained her majority, when acting in the
presence, and under the advice, of her counsel, for her
share of the proceeds of the sale in partition. If she
knew from what source these proceeds came, and still
receipted for them, and there is good reason to believe
she did know, she certainly would not be allowed to
repudiate the transaction now, even if the partition
proceedings were, in fact, void. She certainly could
not have both the money and the land. *Austin v.
Loring,* 63 Mo. 19, and cases cited.

It is charged in the petition that the partition pro-
ceedings *are void on their face.* If this is true, *the
plaintiff's have stated themselves out of court;* for in
such case the remedy at law by action of ejectment would
be adequate and ample. But we have discovered noth-
ing in the proceedings which varies from the require-
ments of the law as then in force. The order of sale
was properly made, the rights of the parties being
therein determined and adjusted; and if the judgment
was rendered at the first term of the court after service
had, this was but an irregularity, not going to the
jurisdiction of the court. And the sale of the property
was duly made; the deed of the sheriff executed and
acknowledged, and the sheriff who conducted the sale
made proper report thereof to the court which was
approved by the court, and this was all that was neces-
sary in such cases. If the sale of the land was valid,
of course this ends the matter of the plaintiff's claim
for relief on that point; but looking over this whole

record, we find nothing to induce the belief that the plaintiff Nancy has been defrauded in the slightest particular, or that any fraud, whatever, was practiced upon her. No one can read this record with any degree of attention without being impressed with the idea that this litigation originated in the fact that the land in question sold in the partition suit in 1855 for a small sum, but was worth when this proceeding was instituted some nine hundred dollars per acre; this appears to be all the fraud there is in this case. And it is to be distinctly understood that this court views with disfavor proceedings like the present, instituted nearly the life of a generation after the transactions on which they are supposed to be based occurred, and which, if successful, to paraphrase the strong language of Judge SCOTT on one occasion, would "make the dead *sin in their graves.*" See *State ex rel. v. West,* 68 Mo. 229; *Lenox v. Harrison,* 88 Mo. 491; *Burdett v. May, ante,* p. 13.

It is said that the judgment in .this cause is erroneous because rendered against the plaintiff Nancy, a married woman. This error can be easily corrected by striking out her name from that portion of the judgment for costs. *Cruchon v. Brown,* 57 Mo. 38; *Weil v. Simmons,* 66 Mo. 617; *Mueller v. Kaessmann,* 84 Mo. 330; *Wescott v. Bridwell,* 40 Mo. 146; *Shaw v. Davis,* 55 Barb. 389; Cent. Law Journ. 1886, 553; *Hunt v. Railroad,* 89 Mo. 607; *Byerly v. Donlin,* 73 Mo. *loc. cit.* 272.

We affirm the judgment. All concur, except Brother BARCLAY, who holds that all the former decisions of this court already cited, on jurisdictional points, should be overruled, and this reason only allows him to concur in the result.