JOHN MYERS, Respondent, v. A. C. MILLER, Appellant.

**Kansas City Court of Appeals, December 4, 1893.**

1. **Judgments:** COLLATERAL ATTACK: STRANGERS: INFERIOR COURT. When a court has jurisdiction of the parties and the subject-matter, the judgment is binding and effectual upon all the parties and their privies and cannot be questioned in a collateral proceeding, and this rule obtains as well in cases in justices' courts and other statutory courts as in courts of record; but such rule does not extend to strangers, who may set up the defense of fraud in obtaining it whenever it is attempted by it to affect their rights.

2. ———: ———: EVIDENCE. The evidence in this case is sufficient to take the question of fraud in obtaining the judgment, on which appellant relied, to the jury, and support the finding.

3. **Appellate Practice:** TRIAL BEFORE COURT: INSTRUCTIONS. A judgment will not be reversed because the trial court, sitting as a jury, fails to declare the law as full as it might have done; especially so, when the instructions given announce correct rules of law applicable to the facts and the whole evidence justifies the finding.

4. **Forcible Entry and Detainer:** JUDGMENT: INSTRUCTION. Instructions given and refused in reference to forcible entry and detainer, and a judgment set up in defense, are considered.

*Appeal from the Carroll Circuit Court.*—HON. E. J. BROADUS, Judge.

AFFIRMED.

*Kinley & Kinley* for appellant.

(1) If Gilliam owned and was in the actual possession of the land up to the time it washed away, and then, upon its re-formation exercised dominion over it, claiming it, used it for cutting poles and tobacco sticks from till 1887, when he located the lines around the land, had the lines cleared away to show where they

were, and to fence, located the corners, and began clearing the land, he was in such actual possession thereof that Reece's intrusion and occupancy in the spring of 1888 was a forcible entry upon Gilliam's possession. *Bartlett v. Draper*, 23 Mo. 407; *King's Adm'r v. St. Louis Gas Light Co.*, 36 Mo. 34–39; *Miller v. Northup*, 49 Mo. 397–400; *Bradley v. West*, 69 Mo. 59–63, and cases cited; *Willis v. Stevens*, 24 Mo. App. 494. (2) If Reece had acquired possession of the land in controversy by a forcible entry on Gilliam's possession, and afterward conveyed his claim to plaintiff, no greater right to possession was vested in plaintiff than Reece had; and if Reece was in possession of the land when Gilliam instituted his suit in forcible entry and detainer against Reece before Farrington, then neither Myers nor anyone else should have been made parties, nor could Reece have avoided his liability to an action in forcible entry by attempting to convey the land. The only person against whom the action could be maintained is the party in actual possession. *Orrick v. Public Schools*, 32 Mo. 315. (3) The judgment in favor of Gilliam against Reece, before justice Farrington for restitution of the land, being regular with personal service on Reece, could not be collaterally attacked by Myers in any event. *Hardin v. Lee*, 51 Mo. 241; *Johns v. Platton*, 55 Iowa, 665; *Winn v. Cory*, 48 Mo. 349. This judgment could not be attacked collaterally for any reason by Reece, nor could it be so attacked by Reece's grantee. Myers who was claiming under the quitclaim deed from Reece to Myers and Coffey, which conveyance was after Reece's forcible entry and was taken by plaintiff with full knowledge of Reece being a trespasser, and that Gilliam had sued him. *State v. Evans*, 83 Mo. 319; *Yates v. Johnson*, 17 Mo. 213; *Sachse v. Clingingsmith*, 97 Mo. 406; *Karnes v. Alexander*, 92 Mo. 660, and cases cited; *Jeffries v.*

*Wright,* 51 Mo. 215–221; *State ex rel. v. Donegan,* 12 Mo. App. 190; s. c., 83 Mo. 374; *Sloan v. Mitchell,* 84 Mo. 546; *McClanahan v. West,* 100 Mo. 309; *Fulkerson v. Davenport,* 70 Mo. 541; *Hope v. Blair,* 105 Mo. 105; *Homer v. Fish,* 1 Pick. (Mass.) 435; *Exendine v. Morris,* 76 Mo. 416; *Johnson v. Beazley,* 65 Mo. 250; *Rowden v. Brown,* 91 Mo. 429. (4) The court erred in permitting the respondent to attack the judgment in favor of *Gilliam v. Reece* before justice Farrington collaterally, even if fraud and collusion were proven, of which, however, there is no evidence. *Mason v. Messenger et al.,* 17 Iowa, 261, third part of opinion on page 272; *Smith v. Smith,* 22 Iowa, 516; *Cooper v. Reynold's Lessee,* 10 Wallace (U. S.), 308; *State v. Evans,* 83 Mo. 319; *McClanahan v. West,* 100 Mo. 309; Van Fleet's Collateral Attack, secs. 12, 16, 17, also Title, Presumptions. (5) There was absolutely no evidence to support the second instruction given on behalf of plaintiff. Both Gilliam and Reece testified there was no agreement or collusion between them concerning the suit before Farrington. Instructions should be based on some evidence in the case, not on counsel's suspicions, pages 41–47, 56, 57, 58 of abstract. *Johnson v. Quarles,* 46 Mo. 423; *Forrester v. Scoville,* 51 Mo. 268; *Kennedy v. Kennedy,* 57 Mo. 73; *Worley v. Dryden, Ib.* 233; *Rogers v. Rogers,* 87 Mo. 257; *Jackson v. Wood,* 88 Mo. 76; *Philpott v. Penn,* 91 Mo. 38.

*C. Hammond & Son* for respondent.

(1) The undisputed facts in this case are that Myers and Coffey after their purchase of the land in controversy from Reece, July 21, 1890, leased it to defendant, Miller, and the other tenants named in the lease read in evidence by plaintiff. Their term did not

expire until January 1, 1891. At the expiration of their lease, or whenever they left the premises, the right of possession immediately devolved upon Myers and Coffey. Miller, the defendant, could not lawfully surrender the possession to anyone else during his term or at its expiration, nor could he accept a lease form anyone else. *Gooch v. Hannon*, 30 Mo. App. 450; *May v. Luckett*, 48 Mo. 472. (2) At the time of the institution of the forcible entry suit of *Gilliam v. Reece*, November 26, 1890, in Egypt township, Reece was not in possession of any part of the land in controversy in this suit. His possession was confined to his cabin and five acres around it, not included in this suit. Miller and the other lessees of Myers and Coffey were in the actual possession of the land in controversy, their crops not yet having all been removed and their lease not having expired. They were not "the servants or under control" of Reece in any way, and, therefore,. could not be "expelled and removed" under a writ of restitution against Reece, though it had been a legal writ. 2 Revised Statutes, sec. 5163. The court in giving instructions numbered 1 and 2 in behalf of plaintiff, and in rendering judgment, necessarily found the facts as above stated. (3) The Egyptian judgment having been obtained by collusion between Gilliam, Reece and defendant Miller, Gilliam acquired no right under it, and the possession of Miller obtained from Gilliam could not be set up to defeat plaintiff in this action. Upon the facts as found by the court, instruction number 3 for plaintiff was properly given. It is contended, however, that the judgment cannot be attacked in this collateral proceeding, "even if fraud and collusion were proven." As between third parties or strangers whose prior rights are sought to be affected by such judgments, the whole weight of authority is in favor of collateral attack. *Meadows v. Duchess of King-*

*ston,* Amb. 759; 1 Chitty's Pleading, [10 Am. Ed.] 579–589; vol. 2, 1166; *Callahan v. Griswold,* 9 Mo. 792; Freeman on Judgments [3 Ed.], p. 377; *Frazier v. Gates,* 61 Ill. 180. Our contention on this point is abundantly sustained by the following, among many other high authorities. Bigelow on Estoppel [5 Ed.], pp. 209–219; *Ogle v. Baker,* 21 Am. St. Rep. 887; *Earl of Baudon v. Becher,* 3 Cl. & Fin. 479; *Webster v. Reid,* 11 How. (U. S.) 437; *Hackett v. Manlove,* 14 Cal. 85; *Hammock v. McBride,* 6 Ga. 178; *Freyandall v. Baldwin,* 103 Ill. 325; *DeArmond v. Adams,* 25 Ind. 458; *Sidensparker v. Sidensparker,* 52 Me. 481; *Pierce v. Jackson,* 6 Mass. 242; *Bergeman v. Hutcheson,* 60 Miss. 872; *Ins. Co. v. Wilson,* 34 N. Y. 409; *Meeker v. Straat,* 38 Mo. App. 239.

SMITH, P. J.—This was an action of unlawful detainer. The undisputed facts showed that the land in controversy was originally situated in Chariton county, and that in 1856 the Missouri river begun to encroach upon it so that by 1868 it was entirely washed away. In the year 1878 it was re-formed by the action of the waters of the Missouri and Grand rivers. When re-formed, it was found situate on the west side of Grand river, by reason of which it became embraced within the territorial limits of Carroll county.

There was a trial in the circuit court, which resulted in judgment for the plaintiff, and from which defendant has appealed.

The defendant by his appeal assails the judgment mainly on the ground that the trial court erred in declaring the law to be that if it, sitting as a jury, found from the evidence that the judgment and writ of restitution in the forcible entry suit of *Gilliam v. Reece* was prosecuted by collusion between said Gilliam and Reece without notice to Myers and Coffey, then

Gilliam acquired no right under said judgment and writ to the possession of the land described in the complaint as against Myers, and the possession of Miller obtained from Gilliam cannot be set up to defeat plaintiff's recovery. We are thus called upon to decide whether this theory of the case announced by the trial court accords with the law.

It is conceded that the justice, by whom the judgment was rendered, had jurisdiction of the parties and the subject-matter of the action, and that the judgment was regular on its face, so that the vital question involved is, whether the judgment was open to collateral attack by plaintiff. The rule to be deduced from the cases in this state is, when a court has jurisdiction of the parties and the subject-matter, the judgment is binding and effectual upon all the parties and their privies, and that it cannot be questioned by them in a collateral proceeding. *Yates v. Johnson,* 87 Mo. 213; *Forder v. Davis,* 38 Mo. 108; *Pentz v. Kuester,* 41 Mo. 447; *Gray v. Bowles,* 74 Mo. 419; *Karnes v. Alexander,* 92 Mo. 660; *Haggard v. Railroad,* 63 Mo. 302; *Baker v. Baker,* 70 Mo. 136; *Carpenter v. King,* 42 Mo. 219; *State v. Evans,* 83 Mo. 319; *Johnson v. Beazley,* 65 Mo. 250; *Lewis v. Gray,* 66 Mo. 614; *Fulkerson v. Davenport,* 70 Mo. 546; *Henry v. McKerdie,* 78 Mo. 416; *Scott v. Crews,* 72 Mo. 263; *State v. Weatherby,* 45 Mo. 17; *Jeffries v. Wright,* 51 Mo. 220. Nor are the judgments of justices of the peace or other statutory courts, where jurisdiction appears to have attached, any more subject to collateral attack than those of courts of record. *Jeffries v. Wright,* 51 Mo. 215–221; *State ex rel. v. Donegan,* 12 Mo. App. 190; s. c., 83 Mo. 374; *Sloan v. Mitchell,* 84 Mo. 546; *McClanahan v. West,* 100 Mo. 309; *Fulkerson v. Davenport,* 70 Mo. 541; *Hope v. Blair,* 105 Mo. 105; *Exendine v. Morris,* 76

Mo. 416; *Johnson v. Beazley, supra; Rowden v. Brown,* 91 Mo. 429.

But may not such a judgment be collaterally attacked for fraud in its procurement by one who is a stranger to it? As was remarked by the judge who delivered the opinion in *McClanahan v. West,* 100 Mo. 309, the authorities differ on the point whether a judgment can be attacked for fraud, or whether it alone can be done by a direct proceeding. In Vanfleet on Collateral Attack, section 13, it is stated that in ejectment the defendant cannot raise the question that a deed offered by plaintiff was procured by fraud or deceit, and so in regard to a judgment. And a similar statement of the law has been announced by the supreme court of Iowa (*Mason v. Messinger,* 17 Iowa, 261; *Smith v. Smith,* 22 Iowa, 272), and perhaps by the appellate courts of some of the other states. But, many very respectable authorities hold that this rule while extending to parties and privies does not exist as to strangers to the judgment. Since the latter have no right to vacate or reverse it by a proceeding for that purpose, it results from the necessity of the case they ought as a general rule be permitted to set up the defense of fraud in obtaining it whenever it is attempted by it to affect their rights. Bigelow on Estoppel [5 Ed], 209 to 217; Freeman on Judgments, secs. 334–336; *Hall v. Hamlin,* 2 Watts, 354; *State v. Little,* 1 N. H. 257; *Murchison v. White,* 54 Tex. 78; *Sidensparker v. Sidensparker,* 52 Me. 481; *Granger v. Cram,* 32 Me. 130; *Thompson's Appeal,* 57 Pa. St. 175; *Frazier v. Gates,* 61 Ill. 180.

The supreme court of the United States in *Webster v. Reid,* 11 Howard, 437, which was an action of ejectment where the plaintiff in the trial court gave in evidence a sheriff's deed and also the judgments and executions on which it was founded, and the defendant

offered to prove that the judgment, execution and sheriff's deed were procured by fraud of the plaintiff, which offer was rejected by the court,—the defendant being a stranger to the judgment he sought thus to attack collaterally,—in the opinion of the court, which was delivered by Justice McClain, said that the "district court erred in overruling the evidence offered by defendant to prove fraud in the judgments, executions, sheriff's sales and deed. When a judgment is brought collaterally before the court as evidence, it may be shown to be void upon its face by want of notice to the person against whom judgment is rendered, or for fraud." *Gaines v. Relf*, 12 How. 472, is to the same effect.

In the consideration of the rule embodied in the declaration of the trial court to which we have already referred, we are entirely relieved of the embarrassment which the conflicting authorities just cited otherwise might have occasioned us by the ruling made by the supreme court of this state in *Callahan v. Griswold*, 9 Mo. 457, where it was declared by so eminent a jurist as Judge NAPTON that "the judgment of a court of competent jurisdiction cannot be impeached collaterally in another court in an action between the same parties, etc. The party must apply to the court which pronounced the judgment to have it vacated. This principle does not prevent a party who was a stranger to the proceeding and had no opportunity to defend against such judgment from showing that it was procured by fraud and that an unconscientious use is about to be made of it." It must, therefore, be ruled that the theory declared by the trial court was correct if the evidence adduced tended to support its hypothesis.

There was introduced evidence which tended to show that Myers and Coffey, after their purchase from the Keyte heirs, had instituted a suit in ejectment

against Reece in the Carroll circuit court, and this suit was settled by their purchase of Reece's claim and title. At the time of their purchase from Reece he had leased all of the land, except about five acres, to a number of different tenants, among them the defendant, Miller; and after Reece made his deed, he and all his tenants became the tenants of Myers and Coffey until January 1, 1891, the tenants by written lease, and Reece by positive agreement. So that from and after the twenty-fourth day of July, 1890, they, Myers and Coffey, were in the absolute possession of the entire tract by their said tenants; Reece himself only occupying about five acres in the west forty, the remaining seventy-five acres being occupied by defendant, Miller, and the other tenants, all of whom had grown crops on the land in the year 1890, which crops were not all removed until about the first of January, 1891.

This was the situation on the twenty-fifth day of November, 1890, when Mr. Gilliam, who then had an ejectment suit pending in the Chariton circuit court, on change of venue from Carroll circuit court, went to the extreme western side of Carroll county, between thirty and forty miles from where the land is situated and all the parties resided, passing over three or four townships, and the county seat, and there instituted a suit of forcible entry and detainer against Reece for the entire eighty acres. The testimony shows that outside of defendant Miller, who told Reece that "a suit was being *gotton up*," Gilliam, wife, and possibly his partner, a Mr. Griffin, no one else within thirty miles of where this land lies was permitted to know anything about the suit.

Reece did not notify Myers of the commencement of the suit by Gilliam against him. He suffered judgment to go by default. The judgment was rendered on Saturday and on Monday following a writ of restitu-

tion was placed in the hands of the constable, who, in company with Gilliam, went to put Reece out. He was found at his cabin with the defendant, Miller, who there in conversation with Gilliam stated that if he, Gilliam, got the land back that he, Miller, wanted to rent it. The constable read the writ to Reece. Reece then gave Gilliam the keys to the cabin. Some of Reece's household goods were in and some out of the cabin. Gilliam then locked the cabin door. Reece then proposed to rent of Gilliam, and then the latter gave him back the keys. The matter ended by Reece remaining peaceably in possession of his cabin and by Miller, who then held a lease from Myers and Coffey not yet expired, becoming Gilliam's tenant. Gilliam paid all the costs.

We cannot, therefore, say there was no evidence to justify the finding by the court that the judgment was procured by fraud. These facts and circumstances were such as to authorize the inference of fraud. What was said in *Walser v. Graham*, 45 Mo. App. 629, applies to the conduct of Reece in respect to the plaintiff, under whom he, as tenant, was holding at the time he was sued by Gilliam.

As a legal proposition it is likely correct, as the defendant contends, that if it was a fact Gilliam owned and was in the *actual* possession of the land up to the time it washed away, and then upon its re-formation exercised dominion over it, claiming it, using it for cutting poles and tobacco sticks from it till 1887, when he located the lines around the land, had lines cleared away to show where they were, and to fence, located the corners, and began clearing the land, he was in such actual possesssson thereof that Reece's intrusion and occupancy in the spring of 1888, was a forcible entry upon Gilliam's possession; and that if Reece had acquired possession by a forcible entry on Gilliam's

possession, and afterwards conveyed his claim to plaintiff, no greater right to possession was vested in plaintiff than Reece had; and if Reece was in possession of the land when Gilliam instituted his suit in forcible entry and detainer against Reece before Farrington, then neither Myers nor any one else should have been made parties, nor could Reece have avoided his liability to an action in forcible entry by attempting to convey the land. The court was not asked to so declare the law. We may presume the court entertained this view of the law, in the absence of any declaration showing the contrary. It may have found the facts did not support this theory, or it may have concluded from the evidence that Enlow, under whom Reece claimed, was the first person to take possession of the land after its restoration, and that Reece had not, therefore, invaded the possession of Gilliam at all. The evidence as to whether Gilliam or Enlow was first to take possession of the *locus in quo* was so conflicting as to have justified the finding either way.

A judgment will not be reversed because that trial court sitting as a jury fails to declare the law as full as it might have done, especially so if the declarations which are given announce correct rules of law applicable to the facts which the evidence tends to prove, and the whole evidence justifies the finding.

It follows from what has been said that the declaration of law requested by defendant to the effect that, if Gilliam took possession of the premises in question on or about December 10, 1890, by virtue of a writ of ouster issued by justice of the peace, Farrington, a justice of the peace of Egypt township, Carroll county, Missouri, in the suit of Thomas E. Gilliam *v.* Wm. W. Reece, said writ having been issued by virtue of a judgment of forcible entry and detainer, wherein personal service was had on said Reece in a suit by said

Gilliam *v.* said Reece, and that said Gilliam was put in possession by the constable, and when said Gilliam was put in possession of said land by the constable in execution of said writ, no one was in possession of said land, except said Reece, and the crops had been removed therefrom, and that said Gilliam afterwards rented said land to said Miller, and he was holding said land under said leasing by Gilliam, then the finding of the court must be for defendant, and that defendant is not guilty as charged in the complaint, was properly refused.

The judgment will be affirmed. All concur.