JARED IRWIN, ADMINISTRATOR, ETC. v. G. BACKUS, D. O. MILLS, L. B. HARRIS, J. H. GASS, AND R. C. CLARK.

SURETIES ON AN ADMINISTRATOR'S BOND.—In an action against the sureties on an administrator's bond for a breach of the bond by the principal, the proceedings taken in the Probate Court in passing on an account rendered by the administrator, and a decree rendered therein directing the administrator to pay over a sum found remaining in his hands, are admissible in evidence against the sureties, although the sureties were not parties to the same.

SAME.—Such decree is equally conclusive upon the administrator and his sureties; and upon the refusal of the administrator to obey the same, the liability of the sureties attaches, and they cannot go behind the decree to inquire into the merits of the matter therein passed on.

WHAT SURETIES MAY SHOW IN DEFENSE.—The sureties may show in defense either that the bond was not made, or that the decree was not made, or that the same has been obeyed, or that the same was obtained by fraud or collusion.

SURETIES ON OFFICIAL BONDS.—As a general rule, sureties upon official bonds are not concluded by a decree or judgment against their principal, unless they have had their day in Court, or an opportunity to be heard in their defense; but administration bonds form an exception to this general rule.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

Backus, the principal in the bond, was not served with process.

The sureties appealed from the judgment.

The other facts are stated in the opinion of the Court.

*J. W. Winans*, for Appellants.

Administrators are not liable on their official bonds for an established debt of their intestate until they are fined with a *devastavit*. (*Commonwealth* v. *Molty*, 10 Barr. 527.)

In an action on an administering bond, the breach assigned being the failure of the administrator to account for assets of the estate and the conversion of them to his own use, where

the plea was the statutory plea of the general issue; held, that "proof that the assets have come into the administrator's hands, does not make a *prima facie* case for the plaintiff." (*The State* v. *Price*, 17 Miss. 431; *Commonwealth* v. *Evans*, 1 Watts, 37; *Myers* v. *Fritz*, 4 Barr. 347; *Williams* v. *Hinkle*, 15 Ala. 713.)

The order of the Probate Court is not admissible in evidence against the defendants and appellants in this case, who are the sureties of Backus.

It is not denied that, as against Backus, the principal, any order of the Probate Court, to the proceedings resulting, in which he was a party, would be admissible. But as this is a proceeding against the sureties, it comes directly within the rule of *Pico* v. *Webster*, 14 Cal. 202, that "In the case of official bonds the sureties undertake, in general terms, that the principal will perform his official duties, and a judgment against the officer in a suit to which they were not parties, is not evidence against them."

It is true, this Court alludes to the fact that a distinction has been taken as to administration bonds founded on the terms of the obligation, but it overrules that distinction by making its decision in *Pico* v. *Webster* general and unexceptional. Besides, that distinction in the leading case where it is taken, (*Simkins* v. *Cobb*, 2 Bailey, 60,) is founded on the principle that the letter of the surety bond made the administrator's accounting, or being required to account, *an essential prerequisite to a suit on the bond*, which is not the case in the bond here sued on.

So again it is held, in *Williams* v. *Hinkle*, 15 Ala. 713, that "in an action on the administration bond against the administrator and his sureties, suggesting a *devastavit*, a judgment against the administrator *de bonis intestatoris*, is not conclusive against the sureties, but *it devolves on the plaintiff to show an actual devastavit* in order to fix their liability."

*Harrison & Estee*, for Respondent.

A *devastavit* is defined to be "a mismanagement of the

estate and effects of the deceased, in squandering, wasting, and misapplying the assets, contrary to the duty imposed on him, for which the executor or administrator shall answer out of his own pocket." (See 2 Williams on Executors, 1529; Bac. Ab. Executors, L. 1.)

By the Act of March 27, 1858, (Statutes 1858, p. 95,) it is provided that "the proceedings of the Courts of Probate within the jurisdiction conferred on them by the laws, shall be construed in the same manner and with like intendment as proceedings of Courts of general jurisdiction, and that the records, orders, judgments, and decrees of the said Probate Courts shall have accorded to them like force and effect and legal presumptions as the records, orders, judgments, and decrees of the District Courts." (See, also, *Irwin* v. *Schriber*, 18 Cal. 504.)

It is also provided in section two hundred and forty-five, (Estates of Deceased Persons, Wood's Digest,) "that decree shall be made for payment of creditors, and that the executor or administrator shall be personally liable to each creditor for his claim. That execution may issue and same proceedings be had under such execution as if it had been issued from the District Court; *that the executor or administrator shall be liable on his bond to each creditor.*"

Sections two hundred and thirty-seven and two hundred and thirty-eight of the same Act provide further, "That settlement of accounts and allowances by the Courts shall be conclusive against all persons in any way interested in the estate, except those laboring under a legal disability. Their rights to proceed, either individually or upon his bond, after two years, shall cease, and in any action brought by any such person the allowance and settlement of the account shall be deemed presumptive evidence of its correctness, and that after proof of proper notice the decree shall be conclusive evidence of the fact."

And section two hundred and forty-nine of the Act referred to provides still further, "That if the administrator neglects to render his account, the same proceedings may be had as pre-

scribed in this chapter in regard to the first account to be rendered by him, and all the provisions relative to the last mentioned account, and the notice and settlement thereof, shall apply to his account presented for final settlement."

Our proposition, then, is :

First—*That the order and findings introduced in evidence in this cause is not only presumptive, but conclusive proof of the facts therein contained.*

And this decree is as conclusive against the sureties on the administrators's official bond as against creditors, heirs, or any other parties in interest.

This proposition, however much it may "surprise" the attorneys of appellants, is sustained not only by the statutes of this State and decisions of this Court, but by nearly every reliable authority in the land.

In the case of *Pico* v. *Webster*, 14 Cal. 202, it is held: "A distinction is taken as to administrators' bonds founded upon the terms of the obligation, as used in South Carolina and other States; those being that the administrators should account—meaning account before the Probate Court—which was held equivalent to an obligation by the surety to pay such decree as that Court might render."

But the attorneys for appellants say "that such distinction" is overruled by making it general, "which certainly cannot be the case," for why refer to the "distinction" unless to create an exception to the rule the Court was then establishing.

There is a wide difference between the two classes of cases, where sureties bind themselves to the effect that their principal shall faithfully perform the duties of an office in general terms, and that class of cases where sureties bind themselves to the effect that their principal shall not only perform all the duties enjoined by law, as such Public Administrator, and particularly that he will account for and *pay over all* moneys that may come to his hands as such administrator. As authority on this proposition we refer to appellants' brief, page 18 ; *Simkins* v. *Cobb,* 2 Bailey, 60.

Now, the question arises, did the administrator "account for

and pay over the money that came into his hands?" The Probate Court, the only tribunal which can try that question, decided that he had not accounted; "that money was in his hands," and that he had not administered according to law, and had not accounted for money in his hands, etc. An issue had *been previously joined,* due notice had been given, not to the heirs and creditors only, but to *all parties interested in the estate.* The sureties *then,* on *that* hearing, and under *that* notice, had their " day in Court," and could have then, in common with all the world, shown that the administrator *had* accounted and *had* paid over the amounts which came into his hands as such officer. And it was those acts, "more particularly," that they bound themselves that he should perform. When they signed his bond they said to the world: first—this officer shall faithfully perform all the duties enjoined on him by law; and second, and *particularly,* he shall account for and pay over all money and property that shall come into his hands—both of which Backus has failed to do. And what evidence have we of that fact? The highest evidence attainable; namely, the solemn judgment of a Court of record having jurisdiction of the subject matter. (See Part II, Cowen & Hill's Notes, p. 57 ; *Bogardus* v. *Clark,* 4 Paige, 623.) It was there held : " The decision of the Surrogate is conclusive against all the world, as being in the nature of a proceeding *in rem.,* to which *any one can make himself a party."* (Part II, Cowen & Hill's Notes, p. 58 ; *Loughton* v. *Atkins,* 1 Pick. 535, 541, 547.)

A decree settling an account is conclusive. (Part II, Cowen & Hill's Notes, p. 58 ; *Sexton* v. *Shombleson,* 6 Pick. 422 ; *Jenison* v. *Hopegood,* 7 Pick. 1 ; *Field* v. *Hitchcock,* 14 Pick. 405 ; *Downing Estate,* 5 Watt, 90.)

"It cannot therefore be impeached in an action on the probate bond." (*Goodrich* v. *Thompson,* 4 Day, 215 ; 14 *Sergeant & Rawle,* 184, note ; *Barton* v. *Morris,* 1 Green. 18.)

"In a suit against sureties the decree against the administrator made by the Ordinary cannot be impeached for error and irregularity." (*Lylor* v. *Brown,* 1 Harp. 31 ; *Tyler* .v.

*Caldwell,* 3 McCord, 225 ; see Cowen & Hill's Notes, Part II, p. 68.)

By the Court, SANDERSON, C. J.

This is an action upon the official bond of the defendant Backus as Public Administrator of the City and County of Sacramento, against him as principal and his co-defendants as sureties.    The suit is brought by his successor in office to recover the amount of a certain estate which came into the hands of Backus in the course of official business, and which he refused to pay over to his successor, the plaintiff, pursuant to the order and decree of the Probate Court.    The plaintiff had judgment in the Court below, and the defendant, having moved for a new trial, which was denied, appeals.    The facts, as disclosed by the record, are substantially as follows :

In 1857, Backus obtained letters of administration upon the estate of one J. T. M. Cooper and took charge of the same through one J. C. Barr, who for a long time previous and subsequent thereto acted as the clerk or agent, or attorney in fact of Backus, in connection with the business of his office of Public Administrator.    The business in the Probate Court seems to have been transacted by Backus, and the collection of the assets belonging to the estate seems to have been made by Barr.    After keeping the estate in his hands without rendering an account until May, 1859, Backus, upon petition of the heirs, was cited by the Probate Court to render his account pursuant to law.    In reply to the citation, Backus alleged that the deceased was not a resident or inhabitant of the county at the time of his death, but that he was a resident of —— County, (name not stated,) and denied the jurisdiction of the Court, charging that the letters of administration which had been issued to him were therefore null and void.    At the same time he filed his final account, and a day was appointed for the hearing, of which due notice was given according to law.    Upon the issues thus formed a trial was had in the Probate Court, resulting in the following find-

ing of facts and decree: " Sometime in the spring of 1857, J. T. M. Cooper departed this life in the City and County of Sacramento, where he resided prior to and at the time of his death. It does not appear that he ever had any residence in the State of California elsewhere than in Sacramento County. After the death of said Cooper, to wit: on the 21st day of April, 1857, Gordon Backus, then Public Administrator of Sacramento County, petitioned to be appointed administrator of said estate, and on the said 21st day of April, 1857, the Probate Court of said County of Sacramento made an order appointing said Gordon Backus administrator of said estate as aforesaid of said J. T. M. Cooper, and that he take charge of and administer upon the same according to law. That said Probate Court also appointed John C. Barr, L. Farmer and M. McIntyre appraisers of said estate, who went on and appraised the same, and found the said estate to consist of the following items, to wit: Cash, one hundred and fifty-two dollars and thirty-eight cents; W. H. Bullard's certificate of deposit, five hundred and fifty dollars; W. L. Pritchard's note, six hundred and fifty dollars; T. A. Goodell's note, two hundred dollars; A. P. Carter's note, two hundred and eighty dollars; making a total sum of one thousand eight hundred and thirty-two dollars and thirty-eight cents. The whole of which estate, according to the items aforesaid, was paid over by Morrison McIntyre to John C. Barr, who received the same as the agent or clerk of the said Gordon Backus, and who was authorized by the said Backus to receive the same by his authority. Afterwards said Barr collected all the notes outstanding, save the note on A. P. Carter. That said Barr, acting as the agent or clerk of Backus, collected in cash the sum of one thousand five hundred and sixty dollars; that out of this some small bills were paid, such as funeral expenses, affidavits of appraisers, etc. That said Barr paid over to said Backus, in cash, the sum of one thousand three hundred and thirty-eight dollars, in addition to the sum of two hundred and two dollars and thirty-eight cents, which Barr collected, which he informed the said Backus was subject to his

order.  But the said Barr asked the said Backus to use the said amount of two hundred and two dollars and thirty-eight cents on account of what Backus was owing him, which Backus allowed him to do.  That Backus never filed any appraisement of said estate, never gave any notice to creditors as required by law, or rendered any exhibit whatsoever of the condition of said estate."

Upon the foregoing facts the Court decreed that Backus should be removed from the office of administrator of the estate in question, and that he should pay over to his successor the sum of one thousand five hundred and forty dollars and thirty-eight cents, and deliver to him the Carter note for two hundred and eighty dollars.  The plaintiff was appointed such successor and Backus was ordered to pay over to him as aforesaid.  The plaintiff demanded the estate from Backus, who refused to pay over the same.

On the trial, in connection with other evidence of like tendency, the foregoing proceedings in the Probate Court were offered in evidence by the plaintiff for the purpose of proving a *devastavit* against Backus and fixing the amount of their liability against his sureties.  The evidence was objected to upon the ground that the sureties were not parties to the proceedings and therefore unaffected thereby, and that as against them the *devastavit*, and the amount thereof, must be established by other evidence.  The Court admitted the evidence, but before the case was finally submitted to the jury the opinion of the Court seems to have changed, for the jury were instructed in effect to disregard the evidence and base their verdict entirely upon the other evidence in the case.  With the proceedings of the Probate Court discarded, appellant claims that the other evidence in the case fails to sustain the verdict, and that some portion of it was improperly admitted.  All the points made by appellant are founded upon the theory that the proceedings in the Probate Court were inadmissible for any purpose as against the sureties, and hence become immaterial if that theory proves fallacious.  As we are of the opinion that the proceedings were admissible, we shall there-

fore confine ourselves to the consideration of that question. If the proceedings were admissible, there being no pretense of fraud or collusion, another trial would result in a like verdict, and hence if error was committed in admitting other evidence bearing upon the same point such error (in the absence of any conflict of testimony, which is the case here) becomes inconsequential.

There is some conflict of authority as to the admissibility of this kind of evidence in an action upon an administrator's bond against his sureties for a breach of the bond by the principal, and as to its effect when admitted. The Supreme Court of North Carolina decided that a recovery against a guardian was no evidence against his sureties in an action upon his bond for non-payment of the judgment. (McKellar v. Bowell et al., 4 Hawks, 37.) The same Court held that a judgment obtained by a creditor of an intestate against his administrator could not be used as evidence by the creditor in an action against the sureties upon the administrator's bond. (McBride v. Clark, 2 Hawks, 43.) In several of the other States a contrary doctrine has prevailed. The Supreme Court of Massachusetts has decided that in an action upon an administrator's bond against the administrator and his sureties, for a refusal on his part to pay a judgment recovered against him, such judgment, if not obtained by fraud and collusion, is conclusive upon the sureties in regard to all matters of defense affecting the merits of the claim as between the parties to such judgment. (Heard v. Lodge et al., 20 Pick. 53.) In New York it has been held that whatever binds and concludes the administrator equally binds and concludes his sureties. (Baggott v. Boulger, 2 Duer, 160; The People on the relation of Demarest v. Laws, 3 Abbott's Practice Reports, 450.) So in Pennsylvania it has been held that a decree of the Orphans' Court against an administrator is conclusive upon his sureties. (Garber v. The Commonwealth, 7 Barr, 265.) In Indiana an administrator was convicted by the finding and decree of the Probate Court of having committed waste. His settlement was opened up and the Court found that he had in his hands, unaccounted for, the sum of

one thousand seven hundred and thirty-two dollars belonging to the decedent's estate.  This finding was held to be conclusive upon his sureties both as to the waste and the amount thereof.  (*Salyer* v. *The State*, 5 Porter, Ind. 202.)  The same doctrine prevails in Kentucky, Missouri, and South Carolina.  (*Hobbs et al.* v. *Middleton*, 1 J. J. Marsh, 177 ; *State* v. *Holt*, 27 Missouri, 340 ; *Lyles* v. *Caldwell et al.*, 3 McCord, 138.)  In South Carolina it seems to be doubted whether the decree of the Ordinary is conclusive of anything more than the fact that the administrator has been legally cited to account, and of the different items composing his account, so as to relieve a Court of law from an investigation into their merits.  (*Simkins* v. *Cobb*, 2 Bailey, 60.)

As a general rule, sureties upon official bonds are not concluded by a decree or judgment against their principal, unless they have had their day in Court or an opportunity to be heard in their defense ; but administration bonds seem to form an exception to this general rule, and the sureties thereon, in respect to their liability for the default of the principal, seem to be classed with such sureties as covenant that their principal shall do a particular act.  To this class belong sureties upon bail and appeal bonds whose liability is fixed by the judgment against their principal.  This distinction seems to be founded upon the terms of the obligation into which the sureties upon an administration bond enter, which are that their principal shall faithfully perform all the duties imposed upon him by the nature of his trust, and will account for and pay over all money which may come into his hands pursuant to the orders and decrees of the Probate Court.  The account must be rendered to and settled by the Court, and the money must be paid out and distributed by and pursuant to the orders and decrees of the Court, and the undertaking of the sureties is that their principal will do all this.  " The Ordinary agrees to place in the hands of the administrator the goods, chattels, etc., of the deceased person, to be by him well and faithfully administered, and the administrator and his sureties undertake that the administrator shall make a just and true account, etc.,

whenever required by the Ordinary, and pay over, etc. Now the administrator is the person who . is cognizant of all the affairs of the estate. The surety is not supposed to know anything about the accounts. The surety is not required to go before the Ordinary. He knows that he cannot be made liable until his principal has been called to account, to pay over, and a decree to that effect has been made by the Ordinary. His contract, then, is made with reference to all this." (*Lyles* v. *Caldwell et al., supra.*)

The condition of the bond in the present case is to the effect " that the said Backus shall faithfully perform all the duties enjoined upon him by law as such Public Administrator, and particularly that he will account for and pay over all moneys and property that may come to his hands as such administrator." This means that he will account to the Probate Court and will pay over, to such persons as such Court may direct, all moneys and property of which he may become possessed in his official capacity; or, in other words, he will obey the orders and decrees of such Court. Such are the terms of the contract, and, upon the refusal of the administrator to obey such order or decree, the liability of the sureties attaches, and they are bound to make good the default of their principal, and cannot go behind the decree to inquire into the merits. They may show in defense either that the bond was not made, or that the decree was not made; or, if made, that the same has been obeyed; or that the same was obtained by fraud or collusion; but they cannot show that the Court has erred in making the decree, or that no assets ever came into the possession of the administrator, although the Court has so found and adjudged. If any error has been committed a remedy is afforded by appeal. Until the order or decree is reversed it is equally conclusive upon the administrator and his sureties. (*The People on the relation of Demarest* v. *Laws, supra.*) We think the proceedings of the Probate Court were admissible, and, in the absence of any fraud or collusion, were conclusive upon the sureties both as to the *devastavit* and the amount thereof.

It follows from what has been said that the verdict of the jury was right, although errors may have been committed by the Court; and there being no pretense that the decree was the result of fraud or collusion, a new trial would not result in any advantage to the appellants.

Judgment affirmed.