THE STATE OF MISSOURI ex rel. GLIDDEN & JOY VARNISH COMPANY, Respondent, v. NATIONAL SURETY COMPANY, Appellant.

Kansas City Court of Appeals, May 30, 1898.*

1. **Assignments for Benefit of Creditors:** JURISDICTION: PRINCIPAL AND SURETY. The circuit court has jurisdiction of assignments for benefit of creditors and of all matters relating to the proper exercise of such jurisdiction, and though they may not specifically appear in its record, such questions are not open to a surety on the assignee's bond in a collateral proceeding.

---

*This case only reached the reporter November 26, 1898.

2. ———: JUDGMENT AGAINST ASSIGNEE: BINDING ON SURETY.   A surety
on an assignee's bond covenants that his principal shall do a particu-
lar act and in the absence of fraud is bound by a judgment against
his principal.

3. ———: ———: ———: FRAUD.   Collusion between a creditor and
an assignee with a fraudulent purpose of recovering a fraudulent
claim from the surety can be defeated by the surety, but the collusive
intent of the assignor and the assignee to defraud the former's cred-
itors does not concern the surety so long as the judgment for the pay-
ment of which it is sought to charge the surety is not procured by
fraud.

*Appeal from Jackson Circuit Court.*—HON. SANFORD B.
LADD, Special Judge.

AFFIRMED.

## STATEMENT.

The following is the finding of facts with conclu-
sions of law thereon:

"In January, 1891, the Glidden and Joy Varnish
Company was a corporation of the state of Ohio, doing
business at Cleveland.   At the same time there was a
corporation of the same name organized under the
laws of Missouri, doing business in Kansas City.   The
capital stock of the Cleveland company
was two hundred thousand dollars ($200,-
000); that of the Kansas City company, twenty thousand
dollars ($20,000), divided into two hundred shares
of one hundred dollars ($100) each, of which George
E. Dudley of Kansas City, held sixty-three (63) shares.
The remainder was owned by F. K. Glidden, F. H.
Glidden, F. A. Glidden and F. K. Glidden, trustee, all
of whom resided in Cleveland and were stockholders of
the Cleveland company and directed its management.
The directors of the Kansas City company were three
in number, Dudley and two of the Gliddens.   Dudley
had immediate charge of the business.

FACTS.

"January 1, 1891, at the annual meeting of the stockholders of the Kansas City company, a resolution was adopted that the Kansas City Company 'will sell and does hereby sell all its property to the Glidden & Joy Varnish Company of Cleveland.' The terms were according to this resolution, that all of the capital stock of the Kansas City company was to be surrendered and canceled, except one share to each director, 'which three shares should be transferred to the Glidden & Joy Varnish Company of Cleveland, to be held in trust, to keep alive the charter of the Glidden & Joy Varnish Company of Kansas City.' The Cleveland Company was to issue to each stockholder so surrendering his stock in the Kansas City company, stock in the Cleveland company, share for share.

"On January 27, 1891, at the annual meeting of the stockholders of the Cleveland company, a corresponding resolution was adopted for the purchase upon the same terms.

"This action of the stockholders of the two companies was ratified by their directors. In pursuance of these resolutions, one hundred and ninety-seven (197) shares of the stock of the Kansas City company were surrendered and canceled, and shares in the Cleveland company issued to their owners instead of them. Two of the Gliddens and Dudley, who were the directors of the Kansas City company, each retained one share of its stock. Those three shares were placed in the hands of the Cleveland company, where they remained.

"After this transaction the Cleveland company took complete control of the business of the Kansas City house, directed its policy, and by resolution of its board of directors, fixed the salary of Dudley, who continued to be its secretary and treasurer and manager, the Gliddens remaining in Cleveland as before. But the regular meetings of the stockholders and

directors of the Kansas City company continued to be held until it failed, and minutes of the proceedings of such meetings were recorded in its record books. There was no outward evidence of the arrangement between the two companies, which had taken place in January, 1891, but publicly and apparently, the business of the Kansas City house proceeded as it had always done. It was carried on in the name of the Kansas City corporation, which continued to purchase merchandise from the Cleveland corporation, the account between the two being kept upon the books of each, as if there were no closer relation between them, than that of seller and buyer, the Kansas City company often giving to the Cleveland company, for purchases of goods from the latter, its notes or acceptances signed by Dudley, its treasurer, and transacting its business with other persons and corporations with whom it had dealings, precisely as it had done before January, 1891.

"At the time of the assignment, in August, 1893, the Cleveland company held the notes of the Kansas City Company for several thousand dollars, and there also stood upon its books an open account for a considerable amount, both notes and accounts being for goods shipped by the Cleveland company to Kansas City, which, so far as the books showed, has been purchased from the Cleveland company by the Kansas City company in the ordinary course of business.

"The Kansas City business was grossly mismanaged by Dudley, and the concern becoming deeply involved, one of the Gliddens came from Cleveland to investigate the situation. He was followed in a few days by James K. Meaher, an attorney of Cleveland. Both of them were representatives of the Cleveland company and came here solely in its interest. They were apprehensive that the creditors of the Kansas

City concern might assert a claim, that the Cleveland company was liable for the debts contracted by Dudley as manager. The assignment of the Kansas City company was made at the instigation and direction of the Cleveland company, through its two representatives, and the designation of Meaher as assignee, by the Kansas City company, in the deed of assignment, was in consequence of the direction to that effect of the Cleveland company.

"When application was made by Meaher to the defendant to become surety upon the bond sued on, he did not disclose to the defendant the action of the stockholders and directors of the two companies, which had been taken in January, 1891. He did inform the defendant that the Cleveland company was a stockholder in the Kansas City company, but he did not disclose the extent of its holdings of stock. All the property and assets of the Kansas City concern came into the possession of Meaher, as assignee, and as such he filed an inventory of them.

"The court in which the assignment proceedings were pending was never informed of the said transactions between these two corporations in 1891, or of the interest of the Cleveland company in the Kansas City business, or that the assignment was made at its direction.

"May 5th, 1894, the assignee filed in court a report which purported to be a statement of his receipts and disbursements, and his doings as assignee, and which show that all claims allowed against the assigned estate had been paid in full, and that there remained in his hands eighteen hundred and ninety-eight dollars and fifty-eight cents ($1,898.58). The report concluded with a petition for a discharge from his trust. This report and petition were referred by the court to Edwin C. Meservey, as commissioner, for

examination and report. The commissioner filed his report July 20, 1895. Upon this report the court, on the 3rd day of August, 1895, made an order that the assignee pay the court costs, and to Meservey, as commissioner, one hundred dollars ($100) for his services, and 'that the remainder and balance of the money in his hands as assignee, together with any book accounts or other property still in his hands as assignee, be paid and surrendered to said Glidden & Joy Varnish company, assignor,' and that upon filing in the clerk's office receipts for such payments, he should stand released and discharged from all liability as assignee.

"There is no evidence in the case that there was any court costs, and it does not appear that the assignee paid the $100 to Meservey.

"February 28, 1896, the assignee filed in court what he denominated his "final report." This, upon motion of the Glidden & Joy Varnish Company, assignor, was by the court stricken from the files.

"In the report filed by the assignee, May 5th, 1894, he charged himself with sundry amounts, as if they had been cash, which had come into his hands upon the sale of merchandise, constituting a part of the inventoried estate, and upon the collection or sale of accounts belonging to the inventoried estate. He did not, in fact, receive cash for these items. The merchandise and accounts were turned over by him to the Cleveland company, or some of its officers, and no cash was actually paid to the assignee for any of them. Such fictitious entries of debit to himself in his report of moneys which he did not actually receive, were fully offset by credits which he took to himself as assignee, in the same report, for moneys paid out by him which he did not actually disburse.

"The claim of the Cleveland company against the Kansas City house, amounting to thirteen thousand,

three hundred and fifty-five and 44-100 dollars ($13,355.44) was duly allowed upon the same footing as those of other creditors. That company gave him its receipts for payments in full of that allowance, although, in fact, it received but a small part of it, and these receipts were used by him as credits in his report to the court.

"When all the fictitious entries, errors or mistakes on both sides of the account were considered together, their presence in the account does not render the balance shown in his hands larger than it would have been if they were eliminated. I do not find that there was any fraudulent purpose on the part of Meaher, or any one else, in adopting this method of stating the accounts, or that any injury has resulted from it.

"After Meaher filed his report, the Cleveland company, received two payments, one of $38.21, and the other of $63.25, which the relator concedes may be allowed as a credit.

"*First:* Notwithstanding the resolutions adopted by the two companies in January, 1891, and the cancellation, in consequence thereof of the greater part of the stock of the Kansas City company, the latter company retained and preserved its identity as a corporation, and in view of the subsequent conduct of both companies and their officers and the methods in which the business at Kansas City was conducted, continued in contemplation of law, to be the owner of the property and assets pertaining to the Kansas City business, and had the right, with the consent of the Cleveland company, to make a voluntary assignment for the benefit of its creditors. At all events, the defendant, as surety, upon the bond in suit, can not be heard to assert the contrary.

CONCLUSIONS of law.

"*Second:* The facts which Meaher, when he made application to the defendant to become surety upon his

bond as assignee, concealed from or omitted to state to the defendant, were not material for the defendant to know.

"*Third:* The errors and fictitious entries appearing in the records of said Meaher, as assignee, afford no ground in law upon which the court can vacate or set aside any of the orders made in the assignment proceedings.

"*Fourth:* The plaintiff is entitled to judgment against defendant, for the penalty of the bond, and its damages should be assessed at the amount stated by Meaher, the assignee, in his report filed May 5th, 1894, to be in his hands, less $100, allowed by the court to the commissioner, and the further sum of $101.46 received by the Cleveland company, from the assignee, since the filing of his report, with interest from the commencement of this suit, filed June 8th, 1897."

Whereupon the court gave judgment for the plaintiff and against the defendant, in said sum; to which action and ruling of the court defendant at the time duly excepted and still excepts.

TRIMBLE & BRALEY and JOHN A. EATON for appellant.

(1) There was no valid assignment. *First,* the assignor did not exist as a corporation for the transaction of business. *Second,* the assignor did not own the property pretended to be assigned. *Third,* the assignor did not owe the debts of the Kansas City house. Hope v. Blair, 105 Mo. 85; Adams v. Cowles, 95 Mo. 501; Higgins v. Peltzer, 49 Mo. 152; Brown v. Woody, 64 Mo. 547. (2) The order approving the final account of the assignee is void. *First,* because it does not comply with the statute. R. S. 1889, sec. 461. *Second,* because it was procured by fraud and the entire assignment was a fraudulent proceeding. R. S. 1889, sec.

461. Black on Judg., sec. 293; Atkinson v. Allen, 36 Am. Dec. 361; Dowers v. Fuller, 35 Am. Dec. 393; Vose v. Morton, 50 Am. Dec. 750; Callahan v. Griswold, 9 Mo. 784; Smith v. Cuyler, 78 Ga. 654; Higgins v. Peltzer, 49 Mo. 152; Golahar v. Gates, 20 Mo. 236; Big. on Estop. 142 and 210, 212; Big. on Fraud, pp. 89, 90; Dingle v. Pollick, 49 Mo. App. 479; Clyce v. Anderson, 49 Mo. 41; Stave Co. v. Butler Co., 121 Mo. 614; Casoni v. Jerome, 58 N. Y. 321; Douglas v. Howland, 24 Wend. 52–59; Annett v. Terry, 35 N. Y. 256; McClannahan v. West, 100 Mo. 309; Murphy v. DeFrance, 101 Mo. 151; Myers v. Miller, 55 Mo. App. 338; 1 Bigelow on Fraud, 88. (3) The surety on the bond was not a party to the proceedings in the circuit court, and had no right to appeal therefrom. R. S. 1889, secs. 461, 463; Nolan v. Johns, 108 Mo. 431; Litchfield v. Crane, 123 U. S. 199; Hale v. Finch, 104 U. S. 261. (4) The recitals in the assignee's bond and the order of the circuit court in the assignment proceedings do not estop the surety. Bigelow on Estop. [4 Ed.] 365; 7 Am. and Eng. Ency. Law, 8; State v. Nauert, 2 Mo. App. 295; Callahan v. Griswold, 9 Mo. 34; Edgell v. Sigerson, 20 Mo. 494; Ward v. Guinlivin, 57 Mo. 425; Litchfield v. Crane, 123 U. S. 199; Hale v. Finch, 104 U. S. 261; Freeman on Judg., secs. 250 and 491. (6) It is conceded that this suit is prosecuted for the benefit of the Ohio company. (7) There was fraudulent concealment in obtaining the bond. Joyce on Ins., sec. 1846; Smith v. Ins. Co., 55 Am. Dec. (Pa.) 446.

PEAK & BALL for respondent.

(1) There was no fraud in the procurement of the bond, and no action on the part of the assignee in the assignment proceeding of which appellant can complain, except his failure to account for the money

reported and adjudged to be in his hands.    Water Co. v. Parker, 35 Pac. Rep. 1048; Wade v. Mt. Sterling, 33 S. W. Rep. 1113; Ins. Co. v. Crittendon, 45 Pac. Rep. 555; Hallettsville v. Long, 32 S. W. Rep. 567; 7 Am. and Eng. Ency. of Law, p. 7, and note. (2) The surety in the bond recognizes the existence of the assignment and delivery of the property to the assignee, the existence of the trust in regard thereto, the corporate existence of the Kansas City company, and its ownership of the property, and is estopped to deny any recital contained in the bond.    Brewing Co. v. Niederweiser, 28 Mo. App. 233; Hundley v. Filbert, 73 Mo. 34; State ex rel. v. Williams, 77 Mo. 463, 468; Bigelow on Estop., p. 295, chap. 10.    (3) The appellant being in privity with the assignee by the terms of its bond, is bound and concluded by the judgment against him in the assignment proceedings.    Nevitt v. Woodburn, 160 Ill. 203; Irwin v. Backus, 25 Cal. 214; Braiden v. Mercer, 44 Ohio St. 339; Robards v. Lamb, 89 Mo. 303, 310; State ex rel. v. Gray, 106 Mo. 526, 533; Young v. Byrd, 124 Mo. 590.    (4) Appellant being notified of the attempt of the assignee to restate his account so as to get rid of the balance adjudged to be in his hands, is concluded by the disposition made by the court of that report.    21 Am. and Eng. Ency. of Law, 161, note 2; Ibid, p. 164, note 2, cases cited on executors and administrators; Ibid, p. 224, note 1; Ibid, 227, note 2; 1 Van Fleet Former Adjudication, 228, sec. 60; Ibid, sec. 64.

ELLISON, J.—The relator, a corporation, made an assignment to James K. Meaher for the benefit of its creditors.    Meaher gave a bond as such assignee with defendant as his surety, conditioned in the following language:

"The condition of this obligation is such that if the above bounden James K. Meaher, assignee, of the

Glidden & Joy Varnish Company, a corporation, or-
ganized under the laws of the state of Missouri, shall
in all things discharge his duties, as assignee, of the
Glidden & Joy Varnish Company, as aforesaid, and
faithfully execute the trust confided to him, then the
above obligation to be void; otherwise to remain in
full force."

On final settlement in the circuit court of Jackson
county, there was a balance in the hands of the assignee
due this relator of $1,898.58. He has failed and refused
to pay over this sum and hence this action is brought
against defendant as surety on the bond aforesaid. The
cause was tried before Sanford B. Ladd, Esq., a mem-
ber of the bar chosen as special judge of the court, and
resulted in a finding and judgment for relator. The
court made a finding of facts, with conclusions of law
thereon, which will be found set forth by us as a
statement of the case, embodying, as it does, a clear
and complete history of the case as made out by the
evidence.

The defense made by defendant consists of several
points and an elaborate brief is filed in support thereof.
It is contended that there was no valid assignment
and that the order approving the final settlement of
the assignee is void. These defenses are subdivided
and various reasons urged in support of each. As will
appear from what we shall say further on, much of the
defense now urged is based on matter not open to de-
fendant's inquiry as a surety for the assignee. Other
matters urged are open to such inquiry. First among
the latter is the contention that the circuit court had no
jurisdiction in the assignment proceedings. If that
court had no jurisdiction in the matter of the assign-
ment, then the accounting had with the assignee
whereby a balance was found in his hands due this
relator, binds no one and the surety on the bond of

the assignee may deny a liability thereon, since the whole proceeding whereby a liability of the assignee or his surety was established would be void.

But we have no doubt the circuit court had jurisdiction of the assignment. That it had jurisdiction over such class of cases is not disputed; but it is said that it had no jurisdiction over this particular case from the fact (as contended by defendant) that there was no assignor, that is to say, the relator, pretending to be such corporation assignor, had no legal existence as such corporation. That it did not owe the debts claimed to be its obligation. And that it did not own the property claimed to have been assigned.

Since the circuit court had jurisdiction of the class of cases to which assignments for the benefit of creditors belong, and since all those matters relating to a proper exercise of that jurisdiction were necessarily passed on by that court, we hold that they are not now open questions to a surety on an assignee's bond. If the court had jurisdiction and exercised such jurisdiction, it is of no consequence in a collateral proceeding that it erred in its judgments or orders. Hope v. Blair, 105 Mo. 85; State ex rel. v. Burckhartt, 87 Mo. 533; State ex rel. v. Smith, 104 Mo. 419; State ex rel. v. Withrow, 108 Mo. 1.

ASSIGNMENT for benefit of creditors: jurisdiction: principal and surety.

Notwithstanding the record may not specifically show that the circuit court decided this relator had a legal existence as a corporation; that it did owe the debts, or some of them, claimed against it; and that it did own the property assigned, yet those were matters which were necessarily involved in the matter of the assignment and must be presumed in favor of the court's jurisdiction, to have been found to exist. So it has been held that from the mere silence of the record as to personal service on a defendant the pre-

sumption can not be indulged that a court of general jurisdiction had not jurisdiction of the person. Mc-Clanahan v. West, 100 Mo. 309; Hamer v. Cook, 118 Mo. 476.

The foregoing disposes of much of the contention of defendant on this appeal and brings us to what we consider the controlling point in the case, viz.: the status defendant fixed upon itself by becoming surety, for the assignee, in the terms of the bond sued on.

By signing the bond the defendant covenanted and agreed that the assignee should do a particular act, that is, that he would faithfully execute

—: judgment agains: assignee: binding on surety.

the trust reposed in him by his appointment as assignee. In such case the surety, in the absence of fraud, is bound by the judgment against the principal in the obligation. "Indeed it may well be considered an established principle that whenever a surety has contracted with reference to the conduct of one of the parties in some suit or proceedings in court, he is, in the absence of fraud and collusion, concluded by the judgment." Nolan v. Johns, 108 Mo. 437; Braidon v. Mercer, 44 Ohio St. 339. That was said in reference to a guardian's bond in the latter case and an injunction bond in the former. And the same rule was applied to an administrator and to an executor's bond. Harrison v. Clark, 87 N. Y. 572; Kelly v. West, 80 N. Y. 139; Irwin v. Backus, 25 Cal. 214; Nevitt v. Woodburn, 160 Ill. 203.

The case of Garver v. Tisinger, 46 Ohio St. 56, was like this case, an action on an assignee's bond, and the rule above announced was applied. And so of the cases therein cited, Little v. Commonwealth, 48 Pa. St. 337, and Commonwealth v. Steacy, 100 Pa. St. 613, as well as the later Ohio case of Walsh v. Miller, 51 Ohio St. 462.

But defendant seeks to avoid the force of these

authorities by the statement that they are cases from jurisdictions where the surety either had his day in court or might have had it by exercising the right of appeal, which, it is said, is guaranteed in those jurisdictions. In some of the cases it is stated the surety might have appealed, but the decisions are not placed on that ground, and in some of the cases it will be found the rule is announced without reference to the right of a surety to appeal from the judgment against his principal. In Nevitt v. Woodburn, 160 Ill. 203, the court, in speaking of this question, said:

"This finding that the executor as such owed the money to the estate is binding on the surety. 'As a general rule, sureties upon official bonds are not concluded by decree or judgment against their principal, unless they have had their day in court, or an opportunity to be heard in advance; but administration bonds seem to form an exception to this general rule, and the sureties thereon, in respect to their liability for the default of the principal, seemed to be classed with such sureties as covenant that their principal shall do a particular act.' Irwin v. Backus, 25 Cal. 214. The liability of a surety upon the administration bond is fixed by the judgment against his principal; and this is so by reason of the terms of the obligation which are substantially those of the bond sued on this case. It results from the nature of the obligation entered into by a surety on an administration or executor's bond, that he is bound and concluded by the judgment against his principal, in the absence of fraud or collusion. The judgment against the principal in such case is *res judicata* and can not be collaterally attacked in the action on the bond."

We therefore deem the surety bound, under the rule announced, without regard to a right of appeal, and hence find it to be unnecessary to say whether,

State ex rel. v. Surety Co.

under the liberal statutes in this state in regard to appeals, a surety might prosecute an appeal in cases of this class.

It will be noted that the qualification made to the liability of the surety in cases of this class, is that there must not be fraud and collusion in procuring the order or judgment for which the surety is to be held liable. If therefore a creditor, by collusion with an assignee has a fraudulent claim allowed with a view of recovering the amount thereof from the surety, the surety could defeat the attempt by a showing of such fraud and collusion. But the collusion of the assignor and assignee to defraud the assignor's creditors is not such a fraud as concerns the surety, so long as the judgment or order for the payment of which it is sought to charge the surety is not procured by fraud. See Garver v. Tisinger, *supra*.

—: —: —: fraud.

Our holding therefore is that the court having jurisdiction of the assignment and having passed upon and adjusted the accounts and ascertained the balance in the assignee's hands, the defendant surety can not be heard to say that there was no assignor or assignment; or, that the assignor did not own the property assigned; or that it did not owe the debts from which the balance against the assignee sprung. But that such surety stands obligated to make good the orders and judgment rendered against the assignee, being bound thereby as the assignee himself is bound. It follows that the judgment of the trial court should be affirmed. All concur.